UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JEFFERY WEISMAN,                                )
                                                )
    Plaintiff,                                 )
                                                )
v.                                              )    Case No. 4:19-cv-00075-JAR
                                                )
BARNES JEWISH-HOSPITAL,                         )
BJC HEALTHCARE, WASHINGTON                      )
UNIVERSITY MEDICAL CENTER,                      )
WASHINGTON UNIVERSITY,                          )
WASHINGTON UNIVERSITY SCHOOL                    )
OF MEDICINE IN ST. LOUIS, DR. ALEX              )
EVERS, DR. RICHARD BENZINGER, and               )
DR. THOMAS COX,                                 )
                                                )
    Defendants.                                )

**ANSWER OF WASHINGTON UNIVERSITY DEFENDANTS**

Defendants Washington University ("University"),[1] Alex Evers, Richard Benzinger, and

Thomas Cox ("University Defendants"), for their answer to plaintiff's amended complaint

(hereinafter, "complaint") and each applicable count and paragraph thereof, state:

## I.    NATURE OF THE CASE

1.    Paragraph 1 states legal conclusions and argument requiring no response.  To the

extent a response is required, University Defendants deny the factual allegations contained in

paragraph 1.

---

[1] Plaintiff has mistakenly named as defendants Washington University Medical Center and
Washington University School of Medicine.  The Medical Center is an uninvolved real estate
holding company, and the Medical School is not a separate legal entity from Washington
University, which is the sole properly-named University entity defendant.  To the extent that an
answer is required on behalf of Washington University Medical Center and Washington
University School of Medicine, they adopt the answers and defenses of University Defendants
set forth herein.

2.      University Defendants admit that plaintiff engaged in research of medical uses for 3-D printing technology, that he was a resident in the Anesthesiology program run by the Washington University/Barnes-Jewish Hospital/St. Louis Children's Hospital Graduate Medical Education Consortium ("GME Consortium"), and that he began his residency program in or about June 2016, and otherwise deny the remaining allegations in paragraph 2.

3.      University Defendants deny the allegations contained in the first three sentences of paragraph 3 and further state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 3 and therefore deny same.

4.      University Defendants deny the allegations contained in paragraph 4.

5.      University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations relating to what plaintiff "felt," the termination of his investor's support, and the relocation of plaintiff's research activities in the first three sentences of paragraph 5 and therefore deny same.  University Defendants deny the remaining allegations in paragraph 5.

6.      University Defendants admit that plaintiff resigned from the Anesthesiology residency program at the end of his second year in the program effective June 30, 2018, and otherwise deny the allegations contained in paragraph 6.

7.      Paragraph 7 states legal conclusions and argument requiring no response.  To the extent a response is required, University Defendants deny the factual allegations contained in paragraph 7.

## II.    JURISDICTION AND VENUE

8.    Paragraph 8 states a legal conclusion requiring no response.  To the extent a response is required, University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegation relating to plaintiff's Illinois citizenship and therefore deny the same, and further admit that University Defendants are citizens of the State of Missouri.

9.    Paragraph 9 states a legal conclusion requiring no response.  To the extent a response is required, University Defendants admit that plaintiff received education and training as a resident in the Anesthesiology program at facilities located in St. Louis City and otherwise deny the factual allegations contained in paragraph 9.

## III.    PARTIES

10.    University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore deny same.

11.    University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore deny same.

12.    For their response to paragraph 12, University Defendants admit that The Washington University is a corporation established by Act of the General Assembly of the State of Missouri approved February 22, 1853, and acts amendatory thereto, and that it has facilities within St. Louis City, and otherwise deny the allegations in paragraph 12 as framed.

3

13.	University Defendants admit that certain residents in the Graduate Medical Education Program have their salaries paid by Barnes-Jewish Hospital and are supervised by University faculty and otherwise deny the remaining allegations in paragraph 13.

14.	University Defendants admit that defendant Evers is a citizen of Missouri, that he is employed by the University, and that he supervised residents, and otherwise deny the remaining allegations in paragraph 14 as framed.

15.	University Defendants admit that defendant Benzinger is a citizen of Missouri, that he is employed by the University, and that he supervised residents, and otherwise deny the remaining allegations contained in paragraph 15 as framed.

16.	University Defendants admit that defendant Cox is a citizen of Missouri, that he is employed by the University, and that he supervised residents, and otherwise deny the remaining allegations contained in paragraph 16 as framed.

## IV.    FACTS

17.	University Defendants admit that plaintiff holds the degrees set forth in paragraph 17 and that he conducted research in 3-D printing technology, and otherwise state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 and therefore deny same.

18.	University Defendants admit plaintiff that conducted research in 3-D printing technology, and otherwise state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 and therefore deny same.

19.	University Defendants admit that plaintiff conducted research in 3-D printing technology and state that the remaining allegations in paragraph 19 contain argument requiring

no response.  To the extent a response to the remaining allegations is required, University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations in paragraph 19 and therefore deny same.

20.     University Defendants admit that plaintiff conducted research in 3-D printing technology, and otherwise state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 and therefore deny same.

21.     University Defendants admit plaintiff holds the degrees listed in paragraph 21, and otherwise state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 and therefore deny same.

22.     University Defendants admit that plaintiff completed his MD-PhD program in six (6) years.  For their response to the allegations in the first 4 sentences of paragraph 22, University Defendants state that these allegations contain argument and speculation to which no response is required.  To the extent a response to these allegations is required, University Defendants deny them as framed.  For their response to the allegations in the fifth sentence of paragraph 22, University Defendants state that they are presently without knowledge or information sufficient to form a belief as to them and therefore deny same.

23.     University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and therefore deny same.

24.     University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore deny same.

25.     University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and therefore deny same.

26.     University Defendants admit that the University promotes itself as one of the leading medical research institutions in the United States and that it receives funding from the NIH, and otherwise deny the remaining allegations in paragraph 26 as framed.

27.     University Defendants admit that the University ranks in the top 10 of institutions receiving NIH funding and that LSU-LTU ranks below the University, and deny the remaining allegations in paragraph 27 as framed.

28.     University Defendants admit that the GME Consortium, of which the University is a part, operates medical residency and fellowship programs, that the Anesthesiology residency program is four years and makes participants eligible for American Board of Anesthesiology ("ABA") certification, and that the Anesthesiology fellowship program is one year and makes participants eligible for ABA certification in a sub-specialty.  University Defendants otherwise deny the remaining allegations in paragraph 28 as framed.

29.     University Defendants admit that the Anesthesiology program offered two positions each year in its Academic Scholars Advancement Program ("ASAP") and that completion of the ASAP program made participants eligible for ABA certification in anesthesiology and a sub-specialty.  University Defendants otherwise deny the allegations in paragraph 29 as framed.

30.    University Defendants admit that BJH pays the University a portion of DGME funds for supervising and training residents, and otherwise state that the remaining allegations are directed to BJH and that University Defendants are presently without knowledge or information sufficient to form a belief as to the truth of said allegations and therefore deny same.

31.    University Defendants admit that, during plaintiff's residency, Dr. Evers, as Chair of the Department of Anesthesiology, had supervisory authority over the Department's programs, including the medical residency program, and that Dr. Cox was Vice-Chair for Education, Dr. Benzinger was Program Director, and Dr. Groener was Assistant Program Director, and otherwise deny the remaining allegations in paragraph 31 as framed.

32.    University Defendants admit that Dr. Evers had managerial responsibility over the Department of Anesthesiology's faculty and operations, and otherwise deny the remaining allegations in paragraph 32.

33.    University Defendants admit that, in 2019, the Department of Anesthesiology ranked in the top five nationally in receiving NIH funding and received over $10 million in NIH funding, and otherwise deny the remaining allegations in paragraph 33.

34.    University Defendants admit that the Department of Anesthesiology received over $10 million in NIH funding in 2019, and otherwise deny the remaining allegations in paragraph 33 as framed.

35.    University Defendants deny that there was a contract with NRMP, and admit the remaining allegations in paragraph 35.

36.    University Defendants deny the allegations in paragraph 36 as framed.

37.    University Defendants deny the allegations in paragraph 37 as framed.

38.     University Defendants admit that the Department of Anesthesiology registered for NRMP matching process in March 2016, and otherwise deny the remaining allegations in paragraph 38 as framed.

39.     University Defendants deny the allegations in paragraph 39.

40.     University Defendants admit that Dr. Evers had managerial authority over the Department of Anesthesiology's operations and that Anesthesiology had over $10 million in NIH funding, and otherwise deny the remaining allegations in paragraph 40.

41.     University Defendants deny the allegations in paragraph 41.

42.     University Defendants deny the allegations in paragraph 42.

43.     University Defendants deny the allegations in paragraph 43.

44.     University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and therefore deny same.

45.     University Defendants deny the allegations in paragraph 45.

46.     University Defendants deny the allegations in paragraph 46.

47.     University Defendants admit that plaintiff held the degrees listed and otherwise deny the allegations in paragraph 47.

48.     University Defendants admit that plaintiff was matched into the Department of Anesthesiology's ASAP program, and otherwise deny the remaining allegations in paragraph 48.

49.     University Defendants admit that plaintiff and the University registered for and participated in the NRMP Match and otherwise deny the remaining allegations in paragraph 49.

50.     University Defendants state that the Court held that the University was not a party to the Memorandum of Appointment and dismissed the University from any claim based on it,

and therefore no response is required.  To the extent a response is required, University Defendants deny the allegations in paragraph 50.

51.    University Defendants state that the Court held that the University was not a party to the Memorandum of Appointment and dismissed the University from any claim based on it, and therefore no response is required.  To the extent a response is required, University Defendants deny that there was any employment agreement with plaintiff and otherwise state that the Memorandum of Appointment speaks for itself and is the best evidence of its content, and otherwise deny the allegations in paragraph 51 as framed.

52.    University Defendants deny the allegations in paragraph 52.

53.    University Defendants admit that Dr. David Ballard became a resident in the Department of Radiology's residency program and otherwise deny the allegations in paragraph 53 as framed.

54.    University Defendants deny the allegations in the first three sentences of paragraph 54 and otherwise state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 and therefore deny same.

55.    University Defendants admit that plaintiff began training as a resident in the Department of Anesthesiology in or about June 2016 and deny the remaining allegations in paragraph 55.

56.    University Defendants state that the Court dismissed the claim based on the alleged "lab-residency contract," and therefore no response is required.  To the extent a response is required, University Defendants deny the allegations in paragraph 56.

57.    University Defendants admit that plaintiff's first training assignment was a four-week rotation in the Emergency Medicine Division and that he worked with attending physicians who evaluated his performance, and otherwise deny the remaining allegations in paragraph 57.

58.    University Defendants deny the allegations in paragraph 58.

59.    University Defendants admit that plaintiff and Dr. Evers discussed plaintiff's lab and company with plaintiff in or about August 2016 and otherwise deny the allegations in paragraph 59.

60.    University Defendants deny the allegations in paragraph 60.

61.    University Defendants admit that plaintiff and Dr. Benzinger met on or about August 25, 2016, to discuss concerns about plaintiff's academic performance and otherwise deny the allegations in paragraph 61.

62.    University Defendants deny the allegations in the first sentence of paragraph 62 and otherwise state that they are presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62 and therefore deny same.

63.    University Defendants deny the allegations in paragraph 63.

64.    University Defendants admit the allegations in paragraph 64.

65.    University Defendants admit that plaintiff and Dr. Benzinger met on or about January 19, 2017, to review plaintiff's performance in the first six-month period of his residency, and otherwise deny the remaining allegations in paragraph 65.

66.    University Defendants deny the allegations in paragraph 66.

67.    University Defendants admit that plaintiff was required to repeat one four-week Internal Medicine rotation and one four-week ICU rotation and otherwise deny the remaining allegations in paragraph 67.

68.    University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations relating to SBP, its investor, and SBP's payment of lab costs and therefore deny same.  University Defendants otherwise deny the remaining allegations in paragraph 68.

69.    University Defendants admit that Drs. Jammalamadaka and Tappa were employed by the University and that Dr. Ballard is a researcher in the Department of Radiology's 3-D printing lab and is currently a Radiology resident, and otherwise deny the remaining allegations in paragraph 69 as framed.

70.    University Defendants deny the allegations in paragraph 70.

71.    University Defendants deny the allegations in paragraph 71.

72.    University Defendants admit that Dr. Groener sent an e-mail to the rotation coordinator on October 31, 2017, state that the October 31, 2017 e-mail speaks for itself and is the best evidence of its content, and otherwise deny the remaining allegations in paragraph 72.

73.    University Defendants deny the allegations in paragraph 73.

74.    University Defendants admit that Drs. Benzinger and Cox met with plaintiff on or about February 22, 2018, for his six-month evaluation, and otherwise deny the remaining allegations in paragraph 74.

75.    University Defendants deny the allegations in paragraph 75.

76.    University Defendants admit that on April 6, 2018, plaintiff resigned from the Anesthesiology residency program effective upon completion of twenty-four months of training and otherwise deny the remaining allegations in paragraph 76.

77.    University Defendants deny the allegations in paragraph 77.

78.   University Defendants admit that plaintiff's resignation was effective June 30, 2018, and otherwise deny the remaining allegations in paragraph 78.

79.   University Defendants deny the allegations in paragraph 79.

80.   University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 and therefore deny same.

81.   University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 and therefore deny same.

82.   University Defendants deny the allegations in paragraph 82.

83.   For their response to the allegations in paragraph 83, University Defendants state that these allegations contain argument and speculation to which no response is required.  To the extent a response is required, University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the factual allegations in paragraph 83 and therefore deny same.

84.   University Defendants admit that Dr. Tammie Benzinger is a faculty member employed in the Department of Radiology, state they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations relating to plaintiff's career in patient care and therefore deny same, and otherwise deny the remaining allegations in paragraph 84.

85.   University Defendants deny the allegations in paragraph 85.

86.   University Defendants deny the allegations in paragraph 86.

87.   University Defendants deny the allegations in paragraph 87.

88.     University Defendants admit that publishing is highly valued in academics and otherwise deny the remaining allegations in paragraph 88.

89.     University Defendants admit that Dr. Jammalamadaka is employed by the University's Department of Radiology ("Radiology"), that Dr. Pamela Woodard is a faculty member in Radiology and is the Senior Vice Chair of Radiology's Research Facilities, and that Dr. David Ballard is a resident in Radiology's residency program in its research track, and otherwise deny the remaining allegations in paragraph 89.

90.     University Defendants deny the allegations in paragraph 90 as framed.

91.     University Defendants admit that plaintiff has been listed as a co-author in published studies after he resigned from his residency, deny the allegations in the first sentence of paragraph 91, and otherwise deny the remaining allegations in paragraph 92 as framed.

92.     University Defendants state that they are presently without knowledge or information sufficient to form a belief as to the truth of the allegations relating to plaintiff's contact with every anesthesiology program in the United States and therefore deny same, and otherwise deny the remaining allegations in paragraph 92.

93.     University Defendants admit that DGME funding is limited to the number of years needed to complete residency training in a resident's first-selected specialty, that anesthesiology takes four years of training, and that plaintiff would have two years of DGME funding available, and otherwise deny the remaining allegations in paragraph 93.

94.     University Defendants deny the allegations in paragraph 94.

### COUNT I – BREACH OF CONTRACT (WU and BJH)

95.     University Defendants incorporate by reference the foregoing answers and responses to all foregoing paragraphs as if fully set forth herein.

96.     University Defendants state that the Court dismissed the University from this count to the extent it was based on the alleged employment contract and dismissed the claim based on the alleged lab-residency contract, and therefore no response is required. University Defendants otherwise deny the remaining allegation in paragraph 96.

97.     University Defendants state that the Court dismissed the University from this count to the extent it was based on the alleged employment contract and dismissed the claim based on the alleged lab-residency contract, and therefore no response is required. University Defendants otherwise deny the remaining allegations in paragraph 97.

98.     University Defendants state that the Court dismissed the University from this count to the extent it was based on the alleged employment contract and dismissed the claim based on the alleged lab-residency contract, and therefore no response is required. University Defendants otherwise deny the remaining allegations in paragraph 98.

99.     University Defendants state that the Court dismissed the University from this count to the extent it was based on the alleged employment contract and dismissed the claim based on the alleged lab-residency contract, and therefore no response is required. University Defendants otherwise deny the remaining allegations in paragraph 99.

100.    University Defendants state that the Court dismissed the University from this count to the extent it was based on the alleged employment contract and dismissed the claim based on the alleged lab-residency contract, and therefore no response is required. University Defendants otherwise deny the remaining allegations in paragraph 100.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCIES (Evers and Benzinger)

101.-108.    University Defendants state that the Court dismissed this count and claim in its entirety, and therefore no response is required.

14

**COUNT III – FRAUDULENT INDUCEMENT (WU, BJH, Evers, and Benzinger)**

109.-114.    University Defendants state that the Court dismissed this count and claim in its entirety, and therefore no response is required.

**COUNT IV – DEFAMATION (WU, BJH, Evers and Benzinger)**

115.    University Defendants incorporate by reference the foregoing answers and responses to all foregoing paragraphs as if fully set forth herein.  University Defendants deny the remaining allegations in paragraph 115.

116.-122.    University Defendants state that the Court dismissed this count and claim based on the alleged statements made in paragraphs 116 through 122, and therefore no response is required.

123.    University Defendants deny the allegations in paragraph 123.

124.    University Defendants deny the allegations in paragraph 124.

125.    University Defendants deny the allegations in paragraph 125.

**COUNT V – TORTIOUS CONVERSION OF LAB AND INTELLECTUAL PROPERTY (WU, BJH, Evers and Benzinger)**

126.    University Defendants incorporate by reference the foregoing answers and responses to all foregoing paragraphs as if fully set forth herein.

127.    University Defendants deny the allegations in paragraph 127.

128.    University Defendants deny the allegations in paragraph 128.

129.    University Defendants deny the allegations in paragraph 129.

**COUNT VI – QUANTUM MERUIT (WU and BJH)**

130.    University Defendants incorporate by reference the foregoing answers and responses to all foregoing paragraphs as if fully set forth herein.

131.    University Defendants deny the allegations in paragraph 131.

15

132.   University Defendants deny the allegations in paragraph 132.

133.   University Defendants deny the allegations in paragraph 133.

## COUNT VII – UNJUST ENRICHMENT (WU and BJH)

134.   University Defendants incorporate by reference the foregoing answers and responses to all foregoing paragraphs as if fully set forth herein.

135.   University Defendants deny the allegations in paragraph 135.

136.   University Defendants deny the allegations in paragraph 136.

## COUNT VIII – CIVIL CONSPIRACY (All Defendants)

137.   University Defendants incorporate by reference the foregoing answers and responses to all foregoing paragraphs as if fully set forth herein.

138.   University Defendants deny the allegations in paragraph 138.

139.   University Defendants deny the allegations in paragraph 139.

140.   University Defendants deny the allegations in paragraph 140.

## DEFENSES

For its further answers and defenses, University Defendants state:

1.   Plaintiff's amended complaint and each remaining count thereof fails to state a claim upon which relief can be granted for numerous reasons, including, but not limited to, the grounds set forth in Defendants' motions to dismiss and the reasons set forth herein.

2.   Plaintiff's remaining claims all fail as a matter of law because each is superseded, barred, and preempted by the exclusive remedy provision of the Missouri Human Rights Act ("MHRA"), R.S.Mo. § 213.070.2.

3.   Plaintiff's remaining claims all fail as a matter of law because each is a claim for educational malpractice, which is not cognizable under Missouri law.

16

4.      Plaintiff's remaining claims fail as a matter of law because plaintiff failed to exhaust internal administrative remedies available to him.

5.      Plaintiff's breach of contract claim against the University based on the alleged "separation agreement" fails as a matter of law for lack of consideration.

6.      Plaintiff's breach of contract claim against the University based on the alleged "separation agreement" fails as a matter of law because the consideration for the alleged agreement failed.

7.      Plaintiff's breach of contract claim against the University based on the alleged "separation agreement" is barred by the statute of frauds.

8.      Plaintiff's breach of contract claim against the University based on the alleged "separation agreement" fails a matter of law because and to the extent it is against public policy.

9.      Plaintiff's breach of contract, quantum meruit, and unjust enrichment claims are barred by waiver and estoppel.

10.     The alleged statements made by University Defendants were and are true, not defamatory, and capable of a non-defamatory meaning.

11.     The alleged statements made by University Defendants were and are absolutely privileged.

12.     The alleged statements made by University Defendants were made under qualified privileges in good faith in performance of a duty and with the fair and reasonable purpose of protecting the interests of defendants, and the interests of the persons to whom the statements were made, and were made without malice by a former employer to a prospective employer.

13. The alleged statements made by and actions taken by University Defendants were made in good faith and without malice.

14. The alleged statements made by University Defendants were and are statements of opinion.

15. University Defendants had a legal right to comment on and criticize plaintiff's performance as a resident.

16. Plaintiff requested the publication of the alleged statements made by University Defendants and thus consented to the statements and waived and released University defendants from any liability for having made the statements.

17. Plaintiff did not own or have the right to possession of the allegedly converted property.

18. University Defendants had an ownership interest in and right to possession of the allegedly converted property.

19. Plaintiff consented to, acquiesced in, and ratified the acquisition by University Defendants of the allegedly converted property.

20. Plaintiff made no effort to retrieve the allegedly converted property.

21. Plaintiff abandoned the allegedly converted property.

22. Plaintiff's conversion and civil conspiracy claims are barred by the economic loss doctrine.

23. Plaintiff's conversion and civil conspiracy claims are barred and not cognizable because they are dependent on the failure to perform a contract.

24. Plaintiff's conversion claim fails as a matter of law because intellectual property and ideas cannot be converted.

18

25.     Plaintiff has not alleged and cannot prove which defendant assumed possession, control and ownership of identifiable and specific items of allegedly converted property.

26.     Plaintiff's quantum meruit and unjust enrichment claims are barred by the doctrine of laches.

27.     Plaintiff's claims and remedies are barred by estoppel, waiver, unclean hands and other equitable grounds.

28.     Plaintiff's quantum meruit and unjust enrichment claims fail because plaintiff made no demand for payment.

29.     Plaintiff's quantum meruit and unjust enrichment claims are barred by accord and satisfaction.

30.     University Defendants did not unjustly accept and retain any benefits because plaintiff was compensated for any benefits conferred on University Defendants.

31.     Plaintiff is not entitled to recover on his quantum meruit and unjust enrichment claims because: (a) plaintiff voluntarily entered into a venture and created benefits with known risks and with a mere expectation of a future profit; and (b) plaintiff entered into the venture with known risks and anticipated contingency occurred.

32.     Plaintiff's civil conspiracy claim fails as a matter of law because there were no underlying or tortious acts.

33.     Plaintiff's civil conspiracy claim fails to state a claim against defendant Cox because plaintiff alleges no unlawful or tortious conduct on the part of defendant Cox.

34.     Plaintiff's civil conspiracy claim fails as a matter with respect to the individual employee defendants because a principal cannot conspire with its agents.

35.     Plaintiff's claims are without basis in fact or law based on the responses above, and plaintiff is not entitled to any relief or damages, including, without limitation, equitable relief, compensatory, economic or consequential damages, punitive damages, emotional distress damages, costs or attorneys' fees.

36.     Plaintiff is not entitled to a jury trial on all claims and remedies sought in the amended complaint.

37.     Plaintiff's claims are duplicative and seek multiple recoveries for the same alleged injuries.

38.     Plaintiff seeks remedies and damages not permitted under the law.

39.     Plaintiff has failed to mitigate his alleged damages.

40.     Plaintiff has sustained no damage, or, if he has, such damage was caused by the conduct and actions of plaintiff and/or third parties, not the conduct and actions of University Defendants.

41.     All actions were taken in good faith.

42.     Any law purporting to permit the recovery of punitive damages in this case is unconstitutional, both on its face and as applied in this case, in violation of the Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2 and 10 of the Missouri Constitution in that said law: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and in determining the amount of any punitive damages award, (2) unconstitutionally permits a jury to award punitive damages merely upon proof by a preponderance of the evidence instead of requiring a heightened burden of proof, (3) unconstitutionally may permit jury consideration of the University Defendants' net worths, (4) is

void for vagueness in that it fails to afford constitutionally sufficient advance notice as to what conduct will result in punitive sanctions, (5) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of a punitive award, (6) lacks constitutionally sufficient standards for appellate review of a punitive award, and (7) otherwise fails to satisfy constitutional requirements under applicable law.

43.    University Defendants hereby give notice that they intend to rely upon any other defense that may become available or appear during the discovery proceedings in this case and hereby reserve their right to amend this answer to assert any such defense or to explain further the basis for any defense already asserted.

44.    University Defendants incorporate, as if fully stated herein, all applicable defenses raised by any other defendant to the extent that they are not inconsistent or do not conflict with the defenses set forth herein.

WHEREFORE, having fully answered, Defendants Washington University, Alex Evers, Richard Benzinger, and Thomas Cox pray that this Court dismiss plaintiff's amended complaint and each count thereof with prejudice, award University Defendants their attorneys' fees and costs as allowed by law, and enter such further and other relief as the Court deems just and proper.

Respectfully submitted,

SHANDS, ELBERT, GIANOULAKIS
  & GILJUM, LLP

/s/ Kevin Anthony Sullivan
Mark J. Bremer #24696MO
Kevin Anthony Sullivan #55140MO
1 North Brentwood Blvd., Suite 800
St. Louis, MO  63105
(314) 241-3963
(314) 241-2509 (fax)
mbremer@shandselbert.com
ksullivan@shandselbert.com

Attorneys for Washington University defendants


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of July, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to Edward R. Moor, Moor Law Office, P.C., One N. LaSalle St., Suite 600, Chicago, IL 60602 and David R. Bohm, Danna McKitrick, P.C., 7701 Forsyth Blvd., Suite 700, St. Louis, MO 63105, attorneys for plaintiff; and Kate Leveque and Carrie Claiborne, Husch Blackwell, LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, attorneys for Barnes-Jewish Hospital defendants.

/s/ Kevin Anthony Sullivan