IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY A. WEISMAN, and<br>STRATEGIC BIOMEDICAL, INC., | )<br>)<br>) | No. 4:19-cv-75-JAR |
| Plaintiffs, | )<br>) | The Honorable John A. Ross |
| v. | )<br>) | |
| BARNES JEWISH HOSPITAL,<br>BJC HEALTHCARE,<br>WASHINGTON UNIVERSITY,<br>ALEX EVERS, RICHARD BENZINGER,<br>And THOMAS COX, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO COMPEL**

Plaintiffs, JEFFERY A. WEISMAN and STRATEGIC BIOMEDICAL, INC., by counsel, respectfully state as follows in support of their Motion to Compel Defendants WASHINGTON UNIVERSITY, ALEX EVERS, RICHARD BENZINGER, and THOMAS COX, (collectively "WU Defendants") to produce certain material in their possession, or accessible to them, responsive to certain requests to produce, by January 20, 2022:

**I.    FACTS**

   **A.    The Request for Documents on NIH Grants**

Part of Plaintiffs' claim is that the Defendants converted his 3D Printing Lab. (Dkt. 86, Complaint, at ¶¶ 85, 87-91, 128 ). The claim is that the Defendants have benefited from converting ownership of Plaintiff's 3D Lab (*see* Dkt. 69 at p. 38), and Plaintiff's 3D Printing Lab is *still* active (https://www.mir.wustl.edu/research/core-resources/3-d-printing-lab/ last accessed January 11, 2013; *and see* Dkt. 86 at ¶ 87-88).  One of the benefits of the Lab to the Defendants is its ability

to be of assistance in obtaining grants from the National Institute of Health ("NIH"). (Dkt. 86 at ¶¶ 26-27, 33-34, 40, 42, 88).  Plaintiff issued a request to produce in November 2020 seeking "Any and all grant applications submitted for work or projects to be conducted or that are being conducted in the Lab since the spring of 2016 through the present." (Ex. A, Request to Produce at ¶ 38).

The Washington University Defendants answered the request as if it only sought grants that would have funded *Plaintiff's* work, which is not the entirety of what the request asked.  The request is designed to explore the benefit that Defendants obtained as a result of their conversion of Plaintiff's 3D Printing Lab.

On December 14, 2022 counsel conferred and Plaintiff counsel for the WU Defendants asked why no grant applications on the 3D Printing Lab had been produced.  (Ex. B, email of 12-14-22).  Plaintiff also sent defense counsel a link to an NIH site showing multiple grants awarded to Washington University to the NIH between 2019 and 2022 in 3 D Printing.  (Ex. C, 12-14-22 email and see https://reporter.nih.gov/search/OF05GnFGYU2wH0hl0jGFlA/project-details/9984353#publications  last accessed 1-12-23).  Counsel for Washington University asked for 7 days to consider supplementing, (Ex. B, at p.2), but on December 21 did not produce material or otherwise answer. (Ex. D, 12-30-22 email).  Counsel for the WU Defendant then asked why the grant applications were relevant (Ex. E, WU 12-30-22 email), to which Plaintiff responded by stating that the issue was alleged in the complaint and the 3D Printing Lab is alleged to have, and actually has, enhanced Washington University's ability to generate an income stream of grants. (Ex. F, 12-30-22 email).   After December 30, 2022, no further amendment, supplementation, or communication has occurred.  No documents have been produced.

### B.    Privilege Log

On March 22, 2022 (Dkt. 141), this Court, *inter alia*, ordered Washington University to produce a privilege log.  Defendant produced a three-page privilege log on June 20, 2022 that listed fifteen documents.  (Ex. G).  On January 4, 2023, Plaintiff sent an email listed dozens of documents produced by the Washington University defendants that bore redactions, but which did not appear on the log.  (Ex. H, January 4, 2023 email).  Plaintiff received no further response on that topic, but the Defendants' privilege log (Ex. G) is not in compliance with this Court's prior order or with F.R.Civ.P. 26(b)(5)(A)(i) and (ii).

### C.    Benzinger's Communications with Duke University

Request 11 sought "All Documents containing communications between You and any other medical school, hospital, or residency program about or concerning Plaintiff at any time." On December 14, 2022 Plaintiff asked defense counsel why no documents had been produced as to Dr. Benzinger and Dr. Thompson's communications with Duke University and Harvard,  (Ex. B, email of 12-14 -22 at p. 2), given that Dr. Benzinger testified at his deposition that he had had email communication with Duke, testifying that he received an email from the Duke Program Director. (Ex. I, Excerpts from Benzinger at p. 280:19).  This, and any related emails, have not been produced.  When questioned after the December 14 phone conference, counsel for the Defendant stated that WU2935-2937 was responsive. (Ex. E).  But WU2935-2937 are emails between Duke and Dr. Thompson, *not* Duke and Dr. Benzinger.  (Ex. J, WU2935-2937). Defendant should be ordered to produce all communications between Benzinger and Duke, which exist per the testimony of Dr. Benzinger.

3

### D. Other Residents That Performed Poorly but Were Not Disciplined

The WU Defendants have consistently objected to producing any information on the performance, or discipline, of other residents citing one state case, *State ex rel. Delmar Gardens North Operating, LLC v. Gaertner*, 239 S.W.3d 608 (2007). *Delmar* held that the personnel file of a defendant's employee was confidential, and that any "discovery that is permitted of confidential personnel records must be 'limited to information that relates to matters put at issue on the pleadings, especially in relation to sensitive personal information.'" *Delmar*, 239 S.W.3d at 612 (citation omitted). It held that the defendant's request for the employee's entire personnel file was overbroad. *Id.*

The Defendants have used this case to preclude examination at the depositions of Dr. Richard Benzinger and Dr. Alex Evers concerning Defendant's lenient treatment of residents who appear to have committed major errors in the delivery of medical care during their residency and have prevented the Plaintiff from questioning Defendants as to whether these residents were disciplined. Plaintiff asked Dr. Benzinger, the program director of Defendants' anesthesia resident program whether a resident named Dr. Kate Meacham was placed on probation during her resident, and defense counsel instructed the witness to not answer the question. (Ex. I, excerpt of Dr. Benzinger's deposition at pp. 308-309). The same instruction was made when Dr. Benzinger was questioned about whether a resident named Dr. Lock was placed on probation. (Ex. I, Benzinger, at p. 312). Dr. Evers, whose entire deposition was marked "confidential" (even as to the non-confidential information contained therein) was asked whether a specific resident was put on probation and essentially claimed to be unaware but asserted that the information was confidential. The Plaintiff, however, was harassed, including by being threatened with probation when he was falsely told in January 2017 that he had failed rotations, including emergency medicine and internal

4

medicine, and would have to repeat rotations (Ex. K, excerpts of Weisman's 9-13-22 Dep. at pp. 164-165, 170, 211:23-212:9; Group Ex. L, Internal Medicine Rotation Evaluations concerning November-December 2016; Group Ex. M, Emergency Medicine Rotation Evaluation July-August 2016).

      E.      **Dr. Thompson's Communications with Harvard University**

Plaintiff applied to the Occupational Medicine Program at Harvard in August 2018 and sent Dr. Thompson a Summative Evaluation that the program required to be filled out. (Ex. N, excerpts of Thompson Dep. at p. 155:6-156:21; Ex. O, email from Plaintiff to Thompson forwarding form). Dr. Thompson received the form (Ex. P), and testified that he believes he complied with the request to submit it to Harvard, and that "this is that prompted me to reach out to Dr. Benzinger to make sure that I was filling this out correctly on Dr. Weisman's behalf." (Ex. N, Thompson, at p. 156:2-5). The WU Defendants did not produce any email or other correspondence showing that Dr. Thompson did so. On December 14, 2022 Plaintiff raised the issue in conference with the WU Defendants' counsel (Ex. B, email of December 14, 2022), and was then told the responsive documents were at WU589-592. (See Ex. Q, 1-3-23 email from counsel, and Exhibit R, WU589-592). That bates range does not contain any email from (or on behalf of Dr. Thompson) to Harvard, and summative evaluations cannot be uploaded in the ERAS and SOPHAS system, only "LORs" (Letters of recommendation and c.v.'s). *See* Ex. R at WU591 and Ex. S, email from Harvard indicating it does not use the ERAS system.

**II.**      **ARGUMENT**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26 does not give any party "the unilateral ability to

5

dictate the scope of discovery based on their own view of the parties' respective theories of the case," because [l]itigation in general and discovery in particular . . .are not one sided. *Liguria Foods, Inc. v. Griffith Labs., Inc.,* 320 F.R.D. 168, 183 (N.D. Iowa 2017) (*quoting Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)).

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

A "relevant" matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on," any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).  The category of matters that are relevant for discovery purposes is broader than the category of matters relevant for admissibility purposes at trial, but discovery is not a fishing expedition and some threshold showing of relevance must be made before a party will be compelled to comply with discovery requests. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).   Here, the Plaintiff is not "fishing" but has clearly alleged, and shown, that the discovery requested is relevant to the claims.

**NIH Grants:**  The NIH grant applications and related material are relevant to the matter pled, are relevant to the conversion of the lab and to the unjust enrichment claim.  Defendants cannot and should not be allowed to simply ignore the request for information on how they used

6

the Plaintiff's 3D Printing Lab to secure, among other things, a string of grants to fund research in the Lab.

**Privilege Log:**  It is axiomatic that a party must comply with the Federal Rules of Civil Procedure and this Court's orders.  The WU Defendants should be ordered to provide a privilege log or ordered to remove all redactions not so logged.

**Benzinger's Communications with Duke University:**  A key allegation in the complaint, and the subject of discovery, is that the Defendants hindered Plaintiff's attempts to transfer to another program.  Here, the WU Defendants *claim* to have complied with Plaintiff's requests but reference communications that do not involve Benzinger even though Dr. Benzinger testified that he had communications with Duke.  This material is relevant and should be promptly produced.

**Other Residents Not Disciplined:**   The objection based on *Delmar* is and responses are improper.  In ruling on the motions to dismiss, this Court ruled that one aspect of the breach of contract claim that survived was the harassment of the Plaintiff in his residency. (Dkt. 69 at p. 15-16).  Discovery which shows that he was treated substantially differently than other residents is relevant to the harassment claim and Dr. Evers and Dr. Benzinger should be compelled to answer questions concerning the three other residents brought up at their depositions.

The reliance on *State ex rel. Delmar Gardens North Operating, LLC v. Gaertner*, 239 S.W.3d 608 (2007) as to the questions asked at the depositions of Dr. Evers and Dr. Benzinger is improper.  The questions were relevant, Plaintiff was not asking for the production of personnel files, much less the entire files of other residents, and the issue goes to how the Defendants treated Plaintiff differently, as alleged in the complaint.  Information that documents differential treatment

7

is relevant and necessary to establish discrimination.  *Lyoch v. Anheuser-Busch Companies, Inc.*, 164 F.R.D. 62, 65 (E.D. Mo. 1995).

**Dr. Thompson's Communications with Harvard University:**  As with the Benzinger documents, Plaintiff's claim is that the Defendants interfered with his attempts to transfer.  Dr. Thompson claims he sent, or directed that, material by sent to Harvard to assist Plaintiff's transfer.  The WU Defendants should promptly produce any such material.

WHEREFORE, the Plaintiffs, JEFFERY A. WEISMAN and STRATEGIC BIOMEDICAL, INC., by counsel, respectfully requests that this Court enter an order, pursuant to F.R.Civ.P. 37(a)(3)(B)  and L.R. 37 – 3.04 requiring Defendants WASHINGTON UNIVERSITY, ALEX EVERS, RICHARD BENZINGER, and THOMAS COX to supplement their production in the ways sought by January 19, 2023.  Plaintiff further prays for any other relief that this Court deems just.

> Respectfully submitted,
>
> MOOR LAW OFFICE, P.C.
> /s/ *Edward R. Moor*
> Edward R. Moor
> Bar No.: 6205169IL
> 53 W. Jackson Blvd., Suite 1527
> Chicago, IL 60604
> (312) 726-6207
> erm@moorlaw.net
>
> **Counsel for Plaintiffs**

**CERTIFICATION**

Under penalties as provided by law pursuant, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

> s/ Edward R. Moor

8

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Edward R. Moor, certify that on January 13, 2023, service of this document was accomplished pursuant to the Court's CM/ECF as to Filing Users and thereby served on all counsel of record.

/s/ Edward R. Moor