**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFERY A. WEISMAN, and | ) | |
| STRATEGIC BIOMEDICAL, INC., | ) | No. 4:19-cv-75-JAR |
| | ) | |
| Plaintiffs, | ) | The Honorable John A. Ross |
| | ) | |
| v. | ) | |
| | ) | |
| BARNES JEWISH HOSPITAL, | ) | |
| BJC HEALTHCARE, | ) | |
| WASHINGTON UNIVERSITY, | ) | |
| ALEX EVERS, RICHARD BENZINGER, | ) | |
| and THOMAS COX, | ) | |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE
<u>COUNTERCLAIMS</u>**

Plaintiff, JEFFERY A. WEISMAN, by counsel, respectfully submits the following

statement of undisputed facts in support of his motion for summary judgment on the counterclaim

asserted by Defendant BARNES JEWISH HOSPITAL ("BJH") and WASHINGTON

UNIVERSITY ("WU"):

**I.      The BJH Counterclaim**

1.      BJH's counterclaim alleges that on a day late in 2017 when he and Plaintiff

Weisman were working together in an operating room that Dr. Benzinger accessed his "University

e-mail account on a BJH computer" (Barnes-Jewish Hospital's First Amended Answer &

Affirmative Defenses to Plaintiff's Second Amended Complaint, Dkt. 123 at p. 24 ¶ 9), and that

when he was out of the room Plaintiff Weisman "accessed Dr. Benzinger's e-mail account without

authorization, conducted a search of Dr. Benzinger's email account, [and] took seventy-three

photographs of Dr. Benzinger's e-mail messages which viewing them on the BJH computer. . ."

*Id.* at ¶ 10.  BJH seeks compensatory damages and attorney's fees under R.S. Mo. § 537.525.  *Id.* at p. 25).

## II.     Email Access on December 13, 2017

2.      On December 13, 2017, Dr. George Benzinger and Dr. Jeffery Weisman shared a computer station in an operating room in the Barnes Jewish Hospital, (Declaration of George Richard Benzinger, Dkt. 117-4, at ¶¶ 4 and 7; Dkt. 110-1 at ¶¶ 4-8 ("Benzinger Decl."); Ex. A, Deposition of Dr. Benzinger at p. 285:15-21), during a long procedure. (Ex. A, Benzinger, 284:8). Plaintiff was authorized to use the work station, as was Dr. Benzinger.  (Ex. A, Benzinger, at p. 285:15-21).

3.      Dr. Benzinger was supervising several procedures that day and would only be in the operating room that Weisman was assigned to intermittently throughout the day. (Ex. A, Benzinger, at p. 282:11-13, 282:23-283:6; Ex. B, Weisman Vol. 1 at p. 316:1-16).

4.      Both Plaintiff Weisman and Dr. Benzinger used the work station to check their work email during the procedure which was proper so long as the surgery was uneventful and the patient stable at the time. (Ex. A, Benzinger, at p., 286:2-11, 291:11-14).

5.      On December 13, 2017, during the course of the day, both Weisman and Benzinger at various times had their Washington University Outlook email accounts open on the workstation in a web browser such as Chrome or Internet Explorer.  (Ex. A, Benzinger, at pp. 286:22-23, 289:14-290:16).

6.      On December 13, 2017 after Plaintiff Weisman returned from a break Dr. Benzinger had his email open on the workstation and left the room, and Plaintiff saw emails about himself on the screen.  (Ex. B, Weisman, Vol. 1 at p. 317:9-318:23).  Plaintiff read the email, photographed it, and then searched in Dr. Benzinger's web based work email account for his name

and the name Gary Hammen. (Ex. B, Weisman, Vol. 1 at p. 319:1-17, Ex. C, Weisman, Vol. 2 at pp. 429:24-430:25).

7.      Dr. Benzinger, at another point on December 13, 2017, had during the day also accessed Plaintiff Weisman's email account on the work station. (Ex. A, Benzinger, at p. 292:3-8; Dkt. 117-4, Benzinger Decl. at ¶ 7).

**III.    BJH Did Not Employ Dr. Benzinger or Maintain His Email Account**

8.      Dr. George Benzinger is employed by Washington University. (Ex. A, Benzinger, at p. 14:14-15)  He was employed by Barnes Jewish Hospital only between 2001 and 2004 when he was a resident.  (Ex. A, Benzinger, at p. 17:7-13)  BJH did not employ Dr. Benzinger in 2017.

9.      Dr. Benzinger's work email address is Benzingerg@wustl.edu.  (Ex. A Benzinger, at p. 61:17).

10.      The emails that the Plaintiff accessed were in Dr. Benzinger's Washington University email account. (Ex. A, Benzinger, at p. 291:11-14; *and see* Ex. D, BJH601, one of the emails Plaintiff photographed as produced by BJH after their privilege review showing that the email account was "benzingerg@wustl.edu").

11.      Dr. Benzinger's email account is owned by Washington University, not BJH. (Ex. A, Benzinger, at p. 288:11-16; 291:11-14)  His email account was administered by Washington University and not BJH because BJH does not maintain or administer Washington University email accounts ending in ".edu."   (Ex. E, Deposition of BJH 30(b)(6) designee Courtney Taylor, at p. 11:12-18; Ex. A, Benzinger, at p. 291:11-14).

## IV.    Dr. Benzinger Accessed his Email with a Web Based Browser

12.    Dr. Benzinger accessed his email account using a commercial browser like Internet Explorer or Chrome, and could access his work email account on any browser and was not limited to accessing his work email from a BJH computer.  (Ex. A, Benzinger, at pp. 289:14-290:16).

## V.    BJH Did Not Inspect the Computer Station at Issue

13.    Long before BJH learned of Plaintiff's access to Dr. Benzinger's Washington University email on a computer station located in an operating room Plaintiff and Dr. Benzinger were working in on December 13, 2017, BJH disposed on the computer at issue due to a hardware malfunction.  (Ex. F, BJH 11-21-22 Objection to Plaintiff's Rule 34 Notice of Inspection at ¶ 1; Ex. E, Taylor at p. 7:23).

14.    BJH could not have, and did not, inspect the computer workstation after it received notice that the Plaintiff had accessed Dr. Benzinger's email account at the station on December 13, 2017.  (Ex. E, Taylor, at 8:15).

## VI.    BJH Incurred No Compensatory Damages as Defined by R.S. Mo. § 537.525

15.    On May 27, 2022 BJH answered a request to produce which sought "[a]ll documents showing costs or expenses incurred because of Plaintiff's alleged photographing of certain of George Benzinger's emails" by stating:

> BJH will produce redacted invoices relating to the investigation and prosecution f the counterclaim at the close of discovery and supplement as necessary and will produce any other non-privileged responsive documents. BJH states that the investigation and discovery are ongoing, and it reserves its right to supplement this request as additional information becomes available. To the extent Request No. 1 asks for more, BJH objects to Request No. 1 because the terms "costs or expenses" are undefined, unclear, vague, ambiguous, subject to varying interpretations, overly broad, and unduly burdensome. BJH further objects to Request No. 1 as overly broad, unduly burdensome, and not proportional to the needs of this case. BJH further objects to Request No. 1 to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine.

4

(Ex. G, BJH 5-27-22 Response to Plaintiff's Second Request to Produce to All Defendants).

16.     On the same day, BJH answered a supplemental interrogatory requesting a "[l]ist all costs and expenses incurred as a result of learning that the Plaintiff allegedly photographed certain email in George Benzinger's account on December 13, 2017" by stating:

> BJH   incurred (and is continuing to incur) costs and expenses through its investigation of Plaintiff's access to and photographing of Dr. Benzinger's email account. BJH also incurred (and is continuing to incur) attorneys' fees related to the investigation of Plaintiff's access to and photographing of Dr. Benzinger's email account. BJH states that the investigation and discovery are ongoing, and it reserves its right to supplement this interrogatory as additional information becomes available. To the extent Interrogatory No. 4 asks for more, BJH objects to Interrogatory No. 4 because the terms "costs and expenses" are undefined, unclear, vague, ambiguous, subject to varying interpretations, overly broad, and unduly burdensome. BJH further objects to Interrogatory No. 4 as overly broad, unduly burdensome, and not proportional to the needs of this case. BJH further objects to Interrogatory No. 4 to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine.

(Ex. H, BJH 5-27-22 Answers to Plaintiff's Supplemental Interrogatories, at ¶ 4).

17.     On June 20, 2022, BJH supplemented its answer to Plaintiff's Supplement Interrogatory number 4 by disclosing attorney's fees as the only cost incurred, stating:

> BJH bas incurred approximately $3,802 in attorneys' fees related to BJH's prosecution of its counterclaim as of BJH's January 31, 2022 invoice. BJH is continuing to incur attorneys' fees related to the investigation of Plaintiff's access to and photographing of Dr. Benzinger's email account and the prosecution of its counterclaim.  BJH states that the investigation and discovery are ongoing, and  it reserves its right to supplement this interrogatory as additional information becomes available.

(Ex. I, BJH 6-20-22 Supplemental Answers to Plaintiff's Supplemental Interrogatories at ¶ 4).

18.     On October 26, 2022, BJH again supplemented its answers to Plaintiff's Supplemental Interrogatory number 4 by stating:

> BJH bas incurred  approximately $24,000 in attorneys' fees related to BJH's prosecution of its counterclaim.  BJH is continuing to incur attorneys' fees related to the investigation of Plaintiff's access to and photographing of Dr. Benzinger's email account  and  the prosecution  of  its counterclaim.  BJH has incurred

5

approximately $1,500 in costs to investigate Plaintiff's access to and photographing of Dr. Benzinger's email account.  BJH states that the investigation and discovery are ongoing, and it reserves its right to supplement this interrogatory as additional information becomes available.

(Ex. J, BJH 10-26-22 Second Supplemental Answers to Plaintiff's Supplemental Interrogatories at ¶ 4).

19.     On December 1, 2022 BJH again supplemented its answers to Plaintiff's

Supplemental Interrogatory number 4 by stating:

BJH identifies the following individuals with knowledge of BJH's investigation into Plaintiff's computer tampering:

• Kaleo Cobb-Adams
• Brian Haefner
• Roslyn Henderson
• Nichole Jennings
• Matthew Modica
• Terra Mouser
• Christopher Niekamp
• Christine Ramatowski
• Jodi Sanchez
• Casey Taylor

BJH refers Plaintiff to redacted billing statements of their attorneys' fees related to their investigation and prosecution of the computer tampering counterclaim (Bates Nos. BJH000672-708).

(Ex. K, BJH 12-1-22 Third Supplemental Response to interrogatory 4 in Plaintiff's Supplemental Interrogatories to BJH).

20.     BJH672-708 are billing statements for attorney's fees.  (Ex. L, BJH672-708).

21.     On December 14, 2022 BJH supplemented its response to Plaintiff's Second

Supplemental Request to Produce by stating:

See BJH000672-708 for redacted billing statements of BJH's attorneys' fees incurred related to their investigation and prosecution of the computer tampering counterclaim. BJH has incurred approximately $1,000 in costs as a result of employee time to investigate the computer tampering counterclaim. See BJH000709-724 for the relevant policies found during the investigation. BJH has incurred approximately $500 in deposition costs to investigate the computer tampering counterclaim, see BJH000725-726 for the deposition invoice.

6

Investigation and discovery are ongoing. BJH reserves its right to supplement this request for production as additional information becomes available.

(Ex. M, BJH 12-14-2022 Supplemental Response to Plaintiff's Second Supplemental Request to Produce).

22.     BJH709-726 were computer policies, marked confidential so not attached here, and two court reporter bills for the two sessions of the Plaintiff's deposition were attached at BJH725-726 addressed to Michael Nolan of Husch Blackwell LLP.  (Ex. N, BJH725-726).

23.     No other documentation as to the "expenditures reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, computer service or data was not altered damaged, or delete by the access" (R.S. Mo. § 537.525) was produced at any time through the present by BJH other than attorney fee bills. (Ex. L) and two court reporter bills for the Plaintiff's deposition. (Ex. N).

24.     Subsequently, Plaintiff issued a Rule 30(b)(6) Notice of Deposition to BJH, and topic 1 was stated to be the "[f]actual bases of Your claim for compensatory damages on Your Counterclaim." (Ex. O, 30(b)(6) Notice and Rider).

25.     BJH did not object to the topic, and designated Courtney Taylor as the BJH employee assigned to testify on the subject.  (Ex. P, BJH 1-12-23 email, p. 1 end of second paragraph).

26.     At deposition, the BJH designee for topic number 1 on the 30(b)(6) rider, Courtney Taylor, testified that no inspection of the work station at issue occurred because the work station was destroyed in 2019 because it had a hardware malfunction.  (Ex. E, Taylor, at pp. 7:13-8:15).

27.     At deposition, the BJH designee for topic number 1 on the 30(b)(6) rider, Courtney Taylor, testified that she did not know what the people listed in BJH's Third Supplemental Answer

to Plaintiff's Supplemental Interrogatory number 4 did on relation to investigating Plaintiff's alleged access of Dr. Benzinger's email.  (Ex. E, Taylor, at pp. 9:5-10:25).

28.     At deposition, the BJH designee for topic number 1 on the 30(b)(6) rider, Courtney Taylor, testified that she did not know how the figure of $1,500 in costs to investigate the Plaintiff's accessing and photographing of Dr. Benzinger's email was arrived at.  (Ex. E, Taylor, at p.p. 11:20-21:6).

29.     At deposition, the BJH designee for topic number 1 on the 30(b)(6) rider, Courtney Taylor, testified that she did not know if the costs of investigation by BJH were $1,500, and did not know if that was BJH's compensatory damages.  (Ex. E, Taylor, at p. 12:7-13, 13:3).

30.     At deposition, the BJH designee for topic number 1 on the 30(b)(6) rider, Courtney Taylor, testified that she did not know where the number of $1,500 came from.  (Ex. E, Taylor, at p. 18:8-14).

31.     At deposition, the BJH designee for topic number 1 on the 30(b)(6) rider, Courtney Taylor, testified that she did not know the relevance of BJH709-BJH726, which includes the court reporter bills for Plaintiff's deposition.  (Ex. E, Taylor, at p. 16:3-17:16).

**VII.    Washington University Incurred No Compensatory Damages as Defined by R.S. Mo. § 537.525**

32.     The Washington University ("WU") counterclaim for computer tampering is almost identical to the BJH counterclaim.  (Dkt. 122 at pp. 23-25).

33.     WU also seeks compensatory damages and attorney's fees.  (Dkt. 122 at p. 25).

34.     The only compensatory damages disclosed to date by WU relative to its computer tampering counterclaim is $179.37 for the time of a Michelle Sutton who verified that the emails at issue were not deleted which was disclosed in answer to an interrogatory to WU that asked "[s]tate the factual basis of your claim for compensatory damages on your Counterclaim."  The

8

$179.37 figure represents Ms. Sutton's hourly rate of $39.86 times the 4.5 hours she spent on the investigation.  (Ex. Q, WU 2-23-23 Answers to Plaintiff's Second Supplemental Interrogatories at ¶ 2).

35.      Michelle Sutton is a paralegal employed by WU's Office of the Vice Chancellor and General Counsel. (Ex. R, Sutton's LinkedIn profile; Ex. S, Sutton's biography on WU's website).

Respectfully submitted,

MOOR LAW OFFICE, P.C.

/s/ *Edward R. Moor*
Edward R. Moor
Bar No.: 6205169IL
53 W. Jackson Blvd., Suite 1527
Chicago, IL 60604
(312) 726-6207
erm@moorlaw.net

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Edward R. Moor, certify that on February 17, 2023, service of this document was accomplished pursuant to the Court's CM/ECF as to Filing Users and thereby served on all counsel of record.

/s/ Edward R. Moor

9