## EMPLOYMENT AGREEMENT

This Employment Agreement (this "Agreement") is entered into this 6th day of November 2016, by and between Strategic Biomedical, Inc. of 506 Deer Run Drive, Mahomet, Illinois, 61853 and Karthik Kumar Tappa (hereinafter referred to as "Karthik") of 4100 Lindell Blvd., Apt. 206, Saint Louis, Missouri, 63108.

> A. Strategic Biomedical, Inc. is engaged in the business of developing, patenting, and commercializing biomedical technologies including but not limited to 3D printing biomedical technologies. Karthik will primarily perform the job duties at the following location: St. Louis College of Pharmacy & the Washington University School of Medicine, Saint Louis, Missouri.

> B. Strategic Biomedical, Inc. desires to employ the services of Karthik for an employment period of one year commencing on December 1, 2016.

Therefore, the parties agree as follows:

**1. EMPLOYMENT.** Strategic Biomedical, Inc. shall employ Karthik as a Co-Director of Medical Technology Development with a commencement date of employment of December 1, 2016. Kartha Kumar Tappa shall provide to Strategic Biomedical, Inc. the following services: 1.) Co-direct the development of all medical technologies at Strategic Biomedical, Inc. 2.) Collaborate with medical faculty at various institutions on medical technology development 3.) Oversee and coordinate all laboratory activities in the laboratories of Strategic Biomedical, Inc. 4.) Set up new 3D medical print laboratories with interested institutions 5.) Train personnel from other institutions on the use of 3D medical printing equipment, software, hardware, etc.  6.) Present at commercial and academic conferences on an as needed basis with respect to medical technologies developed at Strategic Biomedical, Inc. 7.) Perform other duties and take on additional projects in the ordinary course of the business of Strategic Biomedical, Inc. Karthik accepts and agrees to such employment, and agrees to be subject to the general supervision, advice and direction of Strategic Biomedical, Inc. and Strategic Biomedical, Inc.'s supervisory personnel. Karthik shall also perform (i) such other duties as are customarily performed by an employee in a similar position, and (ii) such other and unrelated services and duties as may be assigned to Karthik from time to time by Strategic Biomedical, Inc.

**2. BEST EFFORTS OF EMPLOYEE.** Karthik agrees to perform faithfully, industriously, and to the best of Karthik's ability, experience, and talents, all of the duties that may be required by the express and implicit terms of this Agreement, to the reasonable satisfaction of Strategic Biomedical, Inc.. Such duties shall be provided at such place(s) as the needs, business, or opportunities of Strategic Biomedical, Inc. may require from time to time.

**3. OWNERSHIP OF SOCIAL MEDIA CONTACTS.** Any social media contacts, including "followers" or "friends," that are acquired through accounts (including, but not limited to email


EXHIBIT SB-3

SBI000011

addresses, blogs, Twitter, Facebook, YouTube, or other social media networks) used or created on behalf of Strategic Biomedical, Inc. are the property of Strategic Biomedical, Inc..

**4. COMPENSATION OF EMPLOYEE.** As compensation for the services provided by Karthik under this Agreement, Strategic Biomedical, Inc. will pay Karthik an annual salary of $50,000.00 payable monthly in the amount of $4,166.67 on the first day of each month and subject to applicable federal, state, and local withholding. Upon termination of this Agreement, payments under this paragraph shall cease; provided, however, that Karthik shall be entitled to payments for periods or partial periods that occurred prior to the date of termination and for which Karthik has not yet been paid, and for any commission earned in accordance with Strategic Biomedical, Inc.'s customary procedures, if applicable. Accrued vacation will be paid in accordance with state law and Strategic Biomedical, Inc.'s customary procedures. Further, if and only if Karthik is an employee in good standing on November 30, 2017, Karthik will be granted options in an amount equal to 1% of the outstanding shares of Strategic Biomedical, Inc. on November 30, 2017 at a strike price of one dollar ($1.00) per option. This section of the Agreement is included only for accounting and payroll purposes and should not be construed as establishing a minimum or definite term of employment.

**5. EXPENSE ALLOWANCE.** Strategic Biomedical, Inc. will reimburse Karthik for travel and meals incurred in the ordinary course of the business of Strategic Biomedical, Inc. In addition and in consideration of Karthik's covenant not to compete as enumerated in Paragraph 10 herein below, Strategic Biomedical, Inc. shall provide Karthik a housing and EB1 allowance up to $17,500.00 for the one year period commencing December 1, 2016. Said housing and EB1 allowance shall be paid directly by Strategic Biomedical, Inc. to the vendor of said housing and or the law firm processing the EB1 allowance.

**6. RECOMMENDATIONS FOR IMPROVING OPERATIONS.** Karthik shall provide Strategic Biomedical, Inc. with all information, suggestions, best efforts, and recommendations regarding Strategic Biomedical, Inc.'s business, of which Karthik has knowledge that will be of benefit to Strategic Biomedical, Inc.

**7. CONFIDENTIALITY.** Karthik recognizes that Strategic Biomedical, Inc. has and will have information regarding the following:
- inventions
- products and product design
- processes
- technical matters
- trade secrets
- copyrights, patents, and trademarks
- customer lists and customer relationships
- prices
- costs
- discounts
- business affairs
- suppliers

SBI000012

- future plans

and other vital information items (collectively, "Information") which are valuable, special and unique assets of Strategic Biomedical, Inc. Karthik agrees that he will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of Strategic Biomedical, Inc. Karthik will protect the Information and treat it as strictly confidential. A violation by Karthik of this paragraph shall be a material violation of this Agreement and will justify legal and/or equitable relief.

**8. UNAUTHORIZED DISCLOSURE OF INFORMATION.** If it appears that Karthik has disclosed (or has threatened to disclose) Information in violation of this Agreement, Strategic Biomedical, Inc. shall be entitled to an injunction to restrain Karthik from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. Strategic Biomedical, Inc. shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

**9. CONFIDENTIALITY AFTER TERMINATION OF EMPLOYMENT.** The confidentiality provisions of this Agreement shall remain in full force and effect for a 2 year period after the voluntary or involuntary termination of Karthik's employment.

**10. NON-COMPETE AGREEMENT.** Karthik recognizes that the various items of Information are special and unique assets of the company and need to be protected from improper disclosure. In consideration of the disclosure of the Information to Karthik, he agrees and covenants that during his or her employment by Strategic Biomedical, Inc. and for a period of 1 year following the termination of Karthik's employment, whether such termination is voluntary or involuntary, Karthik will not directly or indirectly engage in any business competitive with Strategic Biomedical, Inc.

This covenant shall apply to the geographical area that includes the area within a 350-mile radius of Saint Louis, Missouri. Directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer of Strategic Biomedical, Inc. for the benefit of a third party that is engaged in such business. Karthik agrees that this non-compete provision will not adversely affect Karthik's livelihood.

**11. EMPLOYEE'S INABILITY TO CONTRACT FOR EMPLOYER.** Karthik shall not have the right to make any contracts or commitments for or on behalf of Strategic Biomedical, Inc. without first obtaining the express written consent of Strategic Biomedical, Inc.

**12. VACATION.** Karthik shall be entitled to 2 week of paid vacation for each completed year of employment. Such vacation must be taken at a time mutually convenient to Strategic Biomedical, Inc. and Karthik, and must be approved by Strategic Biomedical, Inc. Requests for vacation shall be submitted to Karthik's immediate supervisor prior to March 1 of each year.

The provisions of this Vacation section are subject to change in accordance with Strategic Biomedical, Inc. policies in effect from time to time.

SBI000013

**13. SICK LEAVE.** Karthik shall be entitled to 3 day(s) paid time, due to illness or for personal business, for each year of employment, with the year to be measured using Karthik's starting date as the point of beginning. Sick leave benefits may not be converted into cash compensation. Karthik's rights to unused sick leave benefits shall be forfeited upon termination of employment. Sick leave may be accumulated from year to year up to a total of 12 days; excess amounts shall be forfeited.

All requests for sick days off shall be made by Karthik in accordance with Strategic Biomedical, Inc. policies in effect from time to time.

The provisions of this Sick Leave section are subject to change in accordance with Strategic Biomedical, Inc. policies in effect from time to time.

**14. HOLIDAYS.** Karthik shall be entitled to the following holidays with pay during each calendar year:
- New Year's Day
- Memorial Day
- 4th of July/Independence Day
- Thanksgiving Day
- Day after Thanksgiving
- Christmas Eve
- Christmas Day
- New Year's Eve

The provisions of this Holidays section are subject to change in accordance with Strategic Biomedical, Inc. policies in effect from time to time.

**15. TERM/TERMINATION.** Karthik's employment under this Agreement shall be for one year, beginning on December 01, 2016. However, this Agreement may be terminated by Strategic Biomedical, Inc. upon 90 days written notice, and by Karthik upon 90 days written notice. If Karthik is in violation of this Agreement, Strategic Biomedical, Inc. may terminate employment without notice and with compensation to Karthik only to the date of such termination. The compensation paid under this Agreement shall be Karthik's exclusive remedy in either event. Additionally, no further monies, as of the date of termination, will be due and payable for either housing or EB1 allowances as stipulated in Paragraph 5 of this Agreement. Further, if Karthik is terminated by Strategic Biomedical, Inc. or Karthik terminates his employment upon 90 days written notice, Paragraphs 3,7,8,9,10,11,&17 of this Employment Agreement remain in full force and effect according to their terms.

**16. COMPLIANCE WITH EMPLOYER'S RULES.** Karthik agrees to comply with all of the rules and regulations of Strategic Biomedical, Inc..

**17. RETURN OF PROPERTY.** Upon termination of this Agreement, Karthik shall deliver to Strategic Biomedical, Inc. all property which is Strategic Biomedical, Inc.'s property or related to

Strategic Biomedical, Inc.'s business (including keys, records, notes, data, memoranda, models, and equipment) that is in Karthik's possession or under Karthik's control. Such obligation shall be governed by any separate confidentiality or proprietary rights agreement signed by Karthik.

**18. NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or on the third day after being deposited in the United States mail, postage paid, addressed as follows:

Employer:

Strategic Biomedical, Inc.
David Sinow
President
506 Deer Run Drive
Mahomet, Illinois 61853

Employee:

Karthik Kumar Tappa
4100 Lindell Blvd., Apt. 206
Saint Louis, Missouri 63108

Such addresses may be changed from time to time by either party by providing written notice in the manner set forth above.

**19. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**20. AMENDMENT.** This Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties.

**21. SEVERABILITY.** If any provisions of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**22. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**23. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Illinois.

**24. SIGNATORIES.** This Agreement shall be signed by David M. Sinow, in his corporate capacity only as President of Strategic Biomedical, Inc. and by Karthik in an individual capacity. This Agreement is effective as of the date first above written.

_____   Date: 11/06/16

David M. Sinow, President
Strategic Biomedical, Inc.


_____   Date: 11/06/16

Karthik Kumar Tappa

SBI000016