# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JEFFERY WEISMAN, and )
STRATEGIC BIOMEDICAL, INC, )
)
              Plaintiffs, )    No.   4:19-cv-75-JAR
    v. )
)    The Honorable John A. Ross
)
BARNES JEWISH HOSPITAL, )
BJC HEALTHCARE, )
WASHINGTON UNIVERSITY, )
ALEX EVERS, RICHARD BENZINGER, and )
THOMAS COX, )
)
              Defendants. )

### JEFFREY WEISMAN'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO DEFENDANT BARNES-JEWISH HOSPITAL'S INTERROGATORIES

Plaintiff, JEFFERY WEISMAN, by undersigned counsel, pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, supplements his previous answers and objections as follows to the Interrogatories served by Defendant Barnes-Jewish Hospital:

### Preliminary Statement

1.    Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.    By making the accompanying responses and objections to Defendant's interrogatories, Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy,



materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the interrogatories to be relevant or material to the subject matter of this action.

3.      A response to an interrogatory stating that objections shall not be deemed or construed that Plaintiff performed any of the acts described in the interrogatory, or definitions and/or instructions applicable to the interrogatory, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the interrogatory, or definitions and/or instructions applicable to the interrogatory.

4.      Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

5.      Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

### General Objections

1.      Plaintiff objects to each instruction, definition, and interrogatory to the extent it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Plaintiff objects to each interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Plaintiff objects to each instruction, definition, and interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

2

4.      Plaintiff objects to each instruction, definition, and interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant previously produced to Plaintiff. Responding to such an interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such an interrogatory is substantially the same or less for Defendant as for Plaintiff. This objection encompasses, but is not limited to, documents and answers to interrogatories previously produced by Defendant to Plaintiff, and all information produced by Plaintiff to Defendant in response to discovery requests of Defendant. All such information will not be produced.

5.      Defendant's interrogatories may call for information that was provided to the Plaintiff by other entities and that may contain protectible confidential, proprietary, or trade secret information. All such information will not be produced.

6.      To the extent any of Defendant's interrogatories seek information that include expert material, Plaintiff objects to any such interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such interrogatories, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

7.      Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

3

## Objections to Definitions and Instructions

1.     Plaintiff objects to Defendant's Definitions and Instructions as overbroad and unduly burdensome to the extent they attempt to extend the scope of information sought by Defendant's interrogatories beyond information currently accessible to Plaintiff.

2.     Plaintiff objects to Defendant's Definitions and Instructions to the extent that they purport to impose obligations greater than those set forth in the Federal Rules of Civil Procedure or the Local Rules of this Court. Plaintiff further objects to Defendant's Definitions to the extent they call for information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

3.     Plaintiff objects to Defendant's Definitions and Instructions as vague and ambiguous, that they encompass information irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and that are thus overly broad and unduly burdensome.

## Supplemental Answers and Objections to Interrogatories

1.     Please state your full name, current address, telephone number, date of birth, place of birth, marital status, name of spouse (if married), and social security number.

> **ANSWER:**   Subject to the objections above, Plaintiff answers: Jeffrey M. Weisman, 4529 Concord Lane, Northbrook, Illinois 60062, 847-727-8675, married, Marissa Israel, xxx-xx-8843.

2.     Please  identify  each person, other than your attorney, who has knowledge of the facts of this matter, providing each person's name, address, and telephone number, as well as the substance of the facts about which each person has knowledge, including any relevant dates and times surrounding such substance.

> **ANSWER:**   Subject to the objections above, Plaintiff answers:
>
> a. Jeffrey Weisman, May be contacted through counsel. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file,

4

and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants by Plaintiff's Lab and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy.

**SUPPLEMENTAL ANSWER**: Knowledge of Defendants breach of the 2018 Separation Contract; knowledge that Defendants breached the 2018 separation contract by failing to create and provide a final ACGME Summative Evaluation Transcript for Dr. Weisman, and Defendants failure to provide a final Summative Evaluation Transcript to all residency training programs to which he applied. Knowledge of Defendants failure to provide Dr. Weisman with an ACGME Summative Evaluation Transcript and breaches of the 2018 Separation Contract; knowledge of the harassment, bullying, pimping, hostile work environment perpetrated by Defendants. Knowledge of Defendants' deliberate attempts to conspire and create an excuse as to why they failed to provide Dr. Weisman with an ACGME Summative Evaluation Transcript in violation of the 2018 Separation Contract and ACGME Requirements.

b. Alex Evers, MD,  Chair Anesthesia Washington University, St. Louis. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants by Plaintiff's Lab and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy; Knowledge of Defendants breach of the 2018 Separation Contract; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

c.   Richard Benzinger, MD, PhD Program Director, Anesthesiology, Washington University, St. Louis   Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants by Plaintiff's Lab

5

and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy; Knowledge of Defendants breach of the 2018 Separation Contract; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

d.  Thomas Cox, MD          Vice Chair Education Washington University Department of Anesthesiology   and Chair Pediatric Anesthesiology St. Louis Children's Hospital, St. Louis, MO. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants  by Plaintiff's Lab and intellectual property;  knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy; Knowledge of Defendants breach of the 2018 Separation Contract; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

e.  Russell Groener, MD  Washington University St. Louis and St. Louis Children's Hospital, St. Louis, MO. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants  by Plaintiff's Lab and intellectual property;  knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy; Knowledge of Defendants breach of the 2018 Separation Contract; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

f.  David Mills, PhD, Professor Louisiana Tech University, Monroe LA. Knowledge of value of Plaintiff's Lab and intellectual property.

g.  Richard Kordal, PhD     Director of Intellectual Property and Commercialization Louisiana Tech University, Rustin LA.  Knowledge of value of Plaintiff's Lab and intellectual property

h.  Jane Eggerstedt, MD, Provost LSU, Shreveport, LA.  Knowledge of value of Plaintiff's Lab and intellectual property,  knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

i.  Mark Platt, PhD, Dean of Students LSU, Shreveport, LA. Knowledge of value of Plaintiff's Lab and intellectual property,  knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

j.  Horacio D'Agostino, MD, Chair Radiology LSU, Shreveport, LA. Knowledge of value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

k.  Steven Alexander, PhD, Professor LSU, Shreveport, LA. Knowledge of value of Plaintiff's Lab and intellectual property,  knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

l.  Charles Fox, MD, Chair Anesthesiology LSU Shreveport, Shreveport, LA.  Knowledge of value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

m.  Shilpadevi Patil, MD   Program Director Anesthesiology LSU Shreveport, Shreveport, LA. Knowledge of value of Plaintiff's Lab and intellectual property,  knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

n. Alan Kaye, MD, PhD Chair Anesthesiology LSU New Orleans and New Provost LSU Shreveport. Knowledge of value of Plaintiff's Lab and intellectual property,  knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and

intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

o. Jay Marion, MD, Dean GME LSU, Shreveport, LA. Knowledge of value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at LSU, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

p. Leisa Oglesby, BS, RN, MBA, DIO LSU, Shreveport, LA. Knowledge of offer regarding residency and Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

q. Ben Strickland , Program Coordinator LSU, Shreveport, LA. Knowledge of offer regarding residency and Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

r. Jennifer Woerner, DMD, MD, Associate Dean of Academic Affairs, Director of Cleft and Craniofacial Surgery Fellowship, Shreveport, LA Knowledge regarding the value of Plaintiff's Lab and research.

s. Ghali Ghali, DDS, MD, Chancellor and Chairman Oral and Maxillofacial Surgery LSU Health Shreveport, LA. Knowledge regarding the value of Plaintiff's Lab and research.

t. John F. George, Jr. MD, President and CEO BRI, Shreveport, LA Knowledge regarding value of Plaintiff's Lab and research.

u. David Sinow, JD, PhD, CEO Strategic Biomedical, Mahomet, IL. Knowledge of value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at LSU, knowledge about Plaintiff's performance at Washington University, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

v. David Ballard, MD, Radiology Fellow, Washington University, St. Louis, MO. Knowledge of the value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at LSU, knowledge about Plaintiff's performance at Washington University, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

w. John A. Pieper, Pharm. D, President, St. Louis College of Pharmacy, St. Louis, MO. Knowledge of the value of Plaintiff's Lab and intellectual property.

x. Ken Fleischmann, J.D., General Counsel, St. Louis College of Pharmacy, St. Louis, MO. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants  by Plaintiff's Lab and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy. Knowledge of value of Plaintiff's Lab and intellectual property,  knowledge about Plaintiff's performance at Washington University, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

y. Bruce Canaday, PharmD, Dean, St. Louis College of Pharmacy, St. Louis, MO. Knowledge of the value of Plaintiff's Lab and intellectual property.

z. Eric Knoll, PhD, Vice President Operations, St. Louis College of Pharmacy, St. Louis, MO. Knowledge of the value of Plaintiff's Lab and intellectual property.

aa. Evan Kharasch, MD, PhD, Vice Chancellor Research Washington University, Professor Anesthesiology Washington University, Director, The Center for Clinical Pharmacology, Current Vice Chair for Innovation Duke and Professor, Durham, NC.  Knowledgeable about recruitment of Plaintiff to Washington University and Barnes Jewish Hospital, and knowledgeable about the value of Plaintiff's Lab and intellectual property.

bb. Robert W. Gereau.   PhD, Vice Chair for Research, Dept. of Anesthesiology Washington University, St. Louis, MO       Knowledge of the value of Plaintiff's Lab and intellectual property, knowledgeable about Defendants' conversion of Plaintiff's Lab.

cc. Kathleen W. Meacham, MD, PhD, Faculty Washington University Anesthesiology, St. Louis, MO.  Knowledgeable about recruitment of Plaintiff to Washington University and Barnes Jewish Hospital, and knowledgeable about value of Plaintiff's Lab and intellectual property, knowledge of Defendants' harassment of Plaintiff and generation of false evaluations

dd. Mark Meacham, Assistant Professor Mechanical Engineering Washington University St. Louis, St. Louis, MO  Knowledgeable about

recruitment of Plaintiff to Washington University and Barnes Jewish Hospital, and knowledgeable about value of Plaintiff's Lab and intellectual property, knowledge of Defendants' harassment of Plaintiff and generation of false evaluations.

ee. Lauren Gibson, M.B.A., Academic Coordinator Anesthesiology, St. Louis, MO.  Knowledgeable about recruitment of Plaintiff to Washington University and Barnes Jewish Hospital, and knowledgeable about value of Plaintiff's Lab and intellectual property, knowledge of Defendants' harassment of Plaintiff and generation of false evaluations; Knowledge of Defendants failure to provide Dr. Weisman with an ACGME Summative Evaluation Transcript and breaches of the 2018 Separation Contract. Gibson also has knowledge of Defendants' retaliatory motive and intent in refusing to provide Dr. Weisman with an ACGME summative evaluation transcript; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

ff. Sharon Stark   Program Coordinator, Washington University St. Louis Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations, and conspiracy to defame Plaintiff; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

gg. Pamela Woodard, MD, Professor of Radiology and Biomedical Engineering and Senior Vice Chair and Division Director of Radiology Research Facilities, Washington University, St. Louis, MO.  Knowledge of value of Plaintiff's Lab and intellectual property, knowledgeable about Defendants' conversion of Plaintiff's Lab, knowledge of Defendants' harassment of Plaintiff and generation of false evaluations.

hh. Richard Wahl, MD, Professor and Chair Radiology Washington University, St. Louis, MO. Knowledge of the value of Plaintiff's Lab and intellectual property, knowledgeable about Defendants' conversion of Plaintiff's Lab.

ii. Stephanie Rheinheimer, Program Coordinator, Anesthesiology. Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations, and conspiracy to defame Plaintiff.

jj. Reuben Johnson, MD Emergency Medicine Professor Washington University St. Louis, St. Louis, MO.  Aware of Plaintiff's evaluations in the Emergency Medicine rotation.

kk. Daniel Emmert, MD, PhD        Anesthesiology            Professor Washington University, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations, and conspiracy to defame Plaintiff.

ll. Justin Knittle, MD, Assistant Professor, Anesthesiology, St. Louis, MO Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations.

mm. Thomas J. Graetz, MD, Associate Professor, Anesthesiology, Chief, Division of Cardiothoracic Anesthesiology, St. Louis, MO.  Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations.

nn. Amy Loden, MD, Internal Medicine Physician, St. Louis, MO    Knowledge of Plaintiff's performance in internal medicine rotation.

oo. Janet B. McGill, MD, MA, FACE, Internal Medicine Physician, St. Louis, MO.   Knowledge of Plaintiff's performance in internal medicine rotation.

pp. Lisa Tseng, MD, Former Anesthesiology Resident at Defendants. Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations.

qq.  Troy  Wildes,  MD,  Anesthesia  Attending,  St.  Louis,  MO    Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations.

rr. Rebecca P. McAlister, MD, GME Dean and DIO, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, knowledge of Defendants' false evaluations, knowledge of Defendants' failure to release records after Plaintiff left Defendants.

ss. Gary Hammen, M.D.  Resident ASAP, St. Louis, MO.  Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants by Plaintiff's Lab and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy. Knowledge of value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at Washington University, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital

tt. Tia O. Drake  Executive Director, GME Office, Washington University, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, knowledge of Defendants' false evaluations, knowledge of Defendants'

11

failure to release records after Plaintiff left Defendants; Knowledge of Defendants failure to provide Dr. Weisman with an ACGME Summative Evaluation Transcript and breaches of the 2018 Separation Contract. Drake also has knowledge of Defendants' retaliatory motive and intent in refusing to provide Dr. Weisman with an ACGME summative evaluation transcript.

uu. Joseph F. Kras, MD, DDS, Anesthesiologist Washington University, St. Louis, MO.Knowledge about Defendants' harassment of Plaintiff, knowledge of Defendants' false evaluations.

vv. Nicole Erter, Human Resources Director, Barnes Jewish Hospital, St. Louis, MO.   Knowledge about Defendants' harassment of Plaintiff, Defendants' false evaluations.

ww. Martha Szabo, M.D., Former Anesthesiologist Washington University, Rotation Coordinator, St. Louis, MO now at the Cleveland Clinic. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants  by Plaintiff's Lab and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy.  Knowledge of value of Plaintiff's Lab and intellectual property, knowledge about Plaintiff's performance at Washington University, knowledge about the events and terms of Plaintiff's transfer of his Lab and intellectual property to St. Louis, and aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital

xx. Catherine P. Krucylak, MD, Anesthesiologist, Washington University. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, by the failure to grant Plaintiff access to his file, and by the failure to provide a good reference when Plaintiff decided to leave to program; knowledge of defamation by publication of false statement to third parties that Plaintiff failed rotations and that Defendants falsely claimed they could not release records to third parties without consulting counsel; knowledge of Defendants' conversion of lab equipment, and intellectual property; knowledge of benefit conferred on Defendants  by Plaintiff's Lab and intellectual property; knowledge of the unjust enrichment of Defendants'; and knowledge of Defendants' civil conspiracy.   Knowledge about Plaintiff's performance at Washington

12

University, aware of Defendants' defamation of Plaintiff after he left Washington University and Barnes Jewish Hospital.

yy. Thomas Allen Davis, MD, Anesthesiologist Washington University, St. Louis, MO. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

zz. Rajan Paul Dang, MD ENT resident, St. Louis, MO. Knowledge of Benzinger's harassment of residents.

aaa. Valerie Le, MD, Internal Medicine Resident, St. Louis, MO . Knowledge of Benzinger's  harassment of residents.

bbb. Douglas Thompson, MD, Program Director Washington University, St. Louis, MO; Knowledge of Defendants' defamation and conspiracy to defame; Knowledge of Defendants failure to provide Dr. Weisman with an ACGME Summative Evaluation Transcript and breaches of the 2018 Separation Contract. Douglas Thompson has personal knowledge, as well as knowledge as an agent of Defendant Washington University, of his September 23, 2020 representation to Dr. Bakston with the University of Illinois Chicago's Occupational Environmental Medicine Residency that a summative evaluation for Dr. Weisman "does not exist." Thompson also has knowledge of Defendants' retaliatory motive and intent in refusing to provide Dr. Weisman with an ACGME summative evaluation transcript.

ccc. Aaron Norris, MD, PhD, Assistant Program Director, Washington University. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

ddd. Rainer Kentner, MD, Anesthesiologist Washington University, St. Louis, MO.  Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

eee. Michael S. Avidan, MBBCh   Chair, Washington University Anesthesiology, St. Louis, MO.  Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, aware of the value of Plaintiff's Lab and Intellectual Property.

fff. James J. Fehr, MD, Ombudsman, Washington University and Anesthesiologist, Palo Alto, CA. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

ggg. Menelaos Karanikolas, MD, MPH, Anesthesiologist, Washington University, St. Louis, MO. Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

13

hhh. John D. McAllister, MD, Pediatric Anesthesiologist, St. Louis, MO Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

iii. Ivan Kangrga, MD, PhD, Anesthesiologist Washington University, St. Louis, MO.   Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations.

jjj. Laura F. Cavallone, MD, Anesthesiologist, Washington University, rotation coordinator, St. Louis, MO.  Knowledge of breach of contracts by Defendants by harassment during residency by the falsification of evaluations, knowledge of Defendants' defamation in relation to Separation Contract.

kkk. René Tempelhoff, MD, Anesthesiologist Washington University, St. Louis, MO.   Knowledge of Plaintiff's performance and knowledge of harassment of Plaintiff.

lll. Marco Todorovic, Resident Anesthesiology, St. Louis, MO.  Knowledge of Plaintiff's performance and knowledge of harassment of Plaintiff.

mmm. Helga Komen, MD, Anesthesiologist, Washington University, St. Louis, MO. Knowledge of Plaintiff's performance and knowledge of harassment of Plaintiff, aware of the value of Plaintiff's Lab and Intellectual Property.

nnn. Peter Nagele, M.D., Chair, University of Chicago Anesthesia and Former Professor of Anesthesia Washington University St. Louis, Chicago, Illinois.  Aware of Defendants' defamation.

ooo. Jerome Klafta, MD, Professor of Anesthesia and Critical Care, Vice Chair, Education and Academic Affairs, Chicago, IL.   Aware of Defendants' defamation.

ppp. Frank Brown, Clinical Trials Manager at The University of Chicago, Chicago, IL.  Aware of Defendants' defamation.

qqq. Ned F. Nasr, MD, Program Director, Cook County Stroger Anesthesia, Chicago, IL. Aware of Defendants' defamation.

rrr. Christopher A. Troianos, MD Chair Anesthesiology Cleveland Clinic, Cleveland, OH. Aware of Defendants' defamation.

sss. Bryan J. Hierlmeier, M.D., Anesthesiology Program Director, University of Mississippi Medical Center, Jackson MS. Aware of Defendants' defamation.

14

ttt. Kiley Grant, Biomedical Research Foundation, Shreveport, LA. Value of Plaintiff's Lab and intellectual property.

uuu. Chris Kevil, Vice Chancellor Research LSU Health, Shreveport, LA. Value of Plaintiff's Lab and intellectual property.

vvv. Karthik Tappa Researcher, Houston, TX, Value of Plaintiff's Lab and intellectual property.

www. Udayabhanu Jammalamadaka , Researcher, St. Louis, MO.  Value of Plaintiff's Lab and intellectual property.

xxx. Shirley Vaughn,  Administrative Assistant, Department of Anesthesia, Washington, St. Louis, MO. Knowledge of harassment and defamation of Plaintiff.

yyy. Gina LaRossa, Internal Medicine Physician     St. Louis, MO. Knowledge of harassment and defamation of Plaintiff.

zzz. Hawa Abubakar, MBBS, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff.

aaaa. Bruno Maranhao, MD, PhD, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

bbbb. Dean Thorsen, DO, PhD, Chief Resident Anesthesiology, St. Louis, MO.   Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

cccc. Janavi Rao, MD, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

dddd. Isabella Rossi, MD, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

eeee. Jacob McDowell, MD Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

ffff. Sarah Alber, MD, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

15

gggg. Broc Burke, MD, PhD, Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

hhhh. Christopher Davies, MD, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

iiii. Govind Rangrass, MD, Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff.

jjjj. Jasmine Swaniker, MD, Chief Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff, Aware of Defendants' defamation.

kkkk. Wayland Cheng, MD, PhD, Resident Anesthesiology, St. Louis, MO. Knowledge about Defendants' harassment of Plaintiff.

llll. Grant Geigler, Regional Director Echo Pixel, Atlanta, GA. Knowledge of the value of Plaintiff's Lab and intellectual property.

mmmm. Mikhail Y. Berezin, PhD, Washington University St. Louis Department of Radiology faculty, St. Louis, MO. Knowledge of the value of Plaintiff's Lab and intellectual property.

nnnn. Gene Robinson, PhD, Strategic Biomedical Board Member, Faculty at the University of Illinois Urbana Champaign, Champaign, IL. Knowledge of value of Plaintiff's Lab and intellectual property.

Other Washington University Faculty and Administrators   St. Louis, MO. Knowledge of Plaintiff's performance and/or knowledge of harassment of Plaintiff; Knowledge of Defendants failure to provide Dr. Weisman with an ACGME Summative Evaluation Transcript and breaches of the 2018 Separation Contract; knowledge of Defendants' retaliatory motive and intent in refusing to provide Dr. Weisman with an ACGME summative evaluation transcript; knowledge of the harassment, bullying, hostile work environment and retaliation suffered by Dr. Weisman.

Other Residents in the Washington University and Barnes Jewish Hospital, St. Louis, MO. Knowledge of Plaintiff's performance and/or knowledge of harassment of Plaintiff.

Other persons knowledgeable about the value of Plaintiff's Lab and Intellectual Property.

Investigation continues as discovery is ongoing.

3.     Please identify each Person, other than your attorney, with whom you have communicated regarding the claims set forth in your Complaint, including, but not limited to, local, state, or federal government agencies or officials. For each such person or entity, describe in detail the time and date of the communication, all parties to the communication, the subject matter of the communication, any witnesses to the communication, the nature of the communication (e.g., letter, in person, electronic, telephone call, etc.), and all documents related to the communication.

> **ANSWER:**   Subject to the objections above, Plaintiff further objects that this interrogatory is overbroad and burdensome and calls for a narrative. Partially answering over objection, without waiving same, Plaintiff sent a complaint to the EEOC concerning the harassment and retaliation that he had suffered at Washington University and Barnes Jewish Hospital. Plaintiff also contacted the American Board of Anesthesia, which did not respond.  Plaintiff also complained about his treatment at Washington University and Barnes Jewish Hospital to the ACGME.  Plaintiff also called the National Institute of Health to obtain information.   See Plaintiff's production response.

**SUPPLEMENTAL ANSWER:** Plaintiff Dr. Jeffery Weisman filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or around July 15, 2022. Upon information and belief, Defendants are in receipt of a copy of this Charge of Discrimination that alleges continued retaliation against Dr. Weisman for his engagement and participation in legally protected activities.

4.     Please state whether you have ever been a party to a lawsuit (as either a plaintiff or defendant), have ever filed for bankruptcy, or have been a party to any other type of administrative proceeding (as either a claimant/complainant or respondent), providing for each lawsuit, bankruptcy proceeding, or administrative proceeding the date on which the lawsuit, bankruptcy, or claim was filed, the court or agency in which the lawsuit, bankruptcy, or claim was filed, whether you were a plaintiff, defendant, claimant/complainant, or respondent, a description of the allegations and causes of action asserted, the disposition or resolution, the date of the disposition or resolution, the identity of all documents related to the lawsuit, bankruptcy, or claim, and the identity of each person with knowledge of the lawsuit, bankruptcy, or claim.

> **ANSWER:**   Subject to the objections above, Plaintiff answers: Plaintiff has never been involved in a lawsuit or bankruptcy proceeding prior to this case.

5.     Please state whether you have ever been charged with, arrested for, or convicted of a crime (felony or misdemeanor, but excluding non-moving traffic violations). For each such charge, arrest, or conviction, please provide the nature of the offense charged, including the city and state where you were charged, arrested, or convicted, the date of the offense, the names and last known addresses of each and every witness to the events surrounding the offense, whether you were convicted of the offense and, if so, what sentence you received as a result of the conviction. Please also state whether you were incarcerated, placed on probation, or placed on parole. Identify all documents relating to such charge, arrest, or conviction.

**ANSWER:**     Subject to the objections above, Plaintiff answers: Plaintiff has never been charged or convicted of any crime.

6.     Have you or anyone acting on your behalf ever made any allegation of harassment, discrimination, or retaliation, whether formally or informally, against any other individual or organization? If so, please identify the individual or entity against whom such complaint was made, the nature of the complaint, the date of the complaint, and the outcome of the complaint.

**ANSWER:**     Subject to the objections above, Plaintiff answers: Plaintiff has never filed any formal complaint in any forum alleging harassment, discrimination, or retaliation against him by any organization or individual prior to the subject matter of this case.

7.     Please state whether you or anyone acting on your behalf obtained or received any statement (written, oral, recorded, or otherwise) from any individual regarding the matters or claims that are the subject of this proceeding. If so, for each such statement, state when, where, and in what form the statement was made, the facts that support the allegations contained in the statement, and identify the present custodian of the statement, or if the statement was orally given, then state the substance of the statement.

**ANSWER:**     Subject to the objections above, Plaintiff answers:   Plaintiff has multiple oral recordings made contemporaneously during meetings with Defendants and other employees at Washington University and Barnes Jewish Health from 2016 - 2018 in which Plaintiff and such persons make statements regarding, or constituting, harassment, false evaluations of Plaintiff's performance, his fraudulently induced resignation, his converted lab, false letters of recommendation, and/or false promises of assistance in transferring to another residency program.   Plaintiff's counsel has possession of the recordings, which will be produced.

8.     Please identify any individual who provided information for or rendered assistance in responding to these Interrogatories. For each such individual, identify the Interrogatory or Interrogatories for which he or she provided information or to which he or she rendered assistance in responding and describe the information provided and/or assistance rendered.

**ANSWER:**     Subject to the objections above, Plaintiff answers that no person provided information for or rendered assistance in responding to these Interrogatories other than counsel.

9.     Please identify every doctor, physician, health or medical practitioner, hospital, clinic, institution, physical therapist, speech therapist, occupational therapist, psychologist,

18

psychiatrist, counselor, social worker, or other health care provider that you have consulted, been examined by, or been treated by during the period of January 1, 2016, through the date of signing your responses to these interrogatories. For each, state the date(s) of the examination(s), the reason for such examination(s) and/or treatment, and identify all related documents.

> **ANSWER:**   Subject to the objections above, Plaintiff states that he did not seek treatment from any physical therapist, speech therapist, occupational therapist, psychologist, psychiatrist, counselor, or social worker. Defendant has been seeking treatment for Irritable Bowel Syndrome ("IBS") and related gastro-intestinal issues which arose while Weisman was a resident at Washington University and employee at Barnes Jewish Health which was intensely aggravated when Plaintiff was rejected by many other anesthesiology programs as a result of the Defendants' defamatory and false statements. Treaters include: Sunanda Kane, M.D. Mayo Clinic 200 1st St SW # W4, Rochester, MN 55905; Itishree Trivedi, MD, MS, Gastroenterology 1801 W. Taylor St. Outpatient Care Center, Suite 1B, Chicago, IL 60612; and Leonard B. Weinstock, M.D., F.A.C.G at specialists in Gastroenterology, 11525 Olde Cabin Road, St. Louis, MO 6314.

10.    Identify each e-mail address you have used for any period of time between January 1, 2016 and the present, specifically identifying the e-mail address, the time period when you used the e-mail address, whether you used the e-mail address for personal or business use and each computer on which you sent or received e-mail to that e- mail address.

> **ANSWER:**   Subject to the objections above, Plaintiff answers: Jweisman@lsuhsc.edu; Jweisman@wustl.edu;Jefferyweisman@gmail.com; jeff.a.weisman@gmail.com; Jweisman@uic.edu.    Plaintiff objects to disclosing the email addresses he has used in his law practice since leaving Washington University and Barnes Jewish Hospital as they contain privileged and confidential information not relevant to this case. Plaintiff also objects to being required to produce any email in those emails addresses he has disclosed herein which contain attorney-client privileged or work product information.

11.    Please state in detail any and all damages, including, but not limited to, lost wages, other economic damages, physical, emotional, psychological, or punitive damages, that you claim in this lawsuit to have sustained as a result of BJH's alleged actions (including separate calculations of each and every element of damages for each claim as it pertains to BJH). In so answering, please identify any document or other tangible thing that describes, discusses, reflects, or relates to such damages.

> **ANSWER:**   Subject to the objections above, Plaintiff states:  as to past lost income Plaintiff lost approximately $60,000 a year for three years, or $180,000.  As to future lost income as a Board-Certified Anesthesiologist and owner of a

laboratory where he would have been employed as a Physician Researcher apart from his clinical duties, Plaintiff states that this is the subject matter of expert witness testimony and Plaintiff will disclose experts in accordance with schedules entered or to be entered by the Court.  Further, Plaintiff has incurred more than $100,000 in relation to the treatment of his stress induced IBS.  The contents of the laboratory when converted by Defendants was worth more than $2,000,000, and Plaintiff was a 50% shareholder in SBI at all relevant times.  The remainder of Plaintiff's damages are general damages, not presently capable of precise calculation, but the pain and suffering and emotional distress occasioned by the defamation committed by the Defendants is substantial and at trial Plaintiff will seek a minimum of $1,000,000 for these types of damages.

12.    Please identify every employment relationship or other professional activity in which you have engaged for profit and/or income from January 1, 2018 to the present. For each such employment relationship or other professional activity, describe with specificity the name of such employer or business name, your position or job title, your immediate supervisor, the duration of such employment or professional activity, your reason(s) for leaving such employment or professional activity (if applicable), and your pay and benefits, including but not limited to, bonus opportunities, profit sharing, retirement plans, health and life insurance, etc., provided to you by each such employer or in each such professional activity.

**ANSWER:**    Subject to the objections above, particularly the objection that this Interrogatory is overbroad, unduly burdensome, and seeks information that will not lead to the discovery of admissible evidence, Plaintiff answers that his employment relationships and professional activities relating to the subject matter of the Complaint, namely medical residency training and medical research, consist of:

Marek Weisman LLC, limited partner and part-time attorney, no supervisors, from 2018 to present. Plaintiff has not received any guaranteed payments, distributions, or other compensation from MW, nor any other pay or benefits, nor any bonus opportunities, profit sharing, retirement plans, health and life insurance, etc.

Physician at Assisted Recovery Centers of America, 1-1-19 to  7-1-2019. 1099 contractor.  Compensated $50/patient.  Total earnings $80,000. Weisman left to devote his time to other activities.

National Institute for Occupational Safety and Health Grant Recipient at the University of Illinois at Chicago, $58,000 per year (2 year grant). Masters in Public Health, student in the Division of Environmental and Occupational Health Sciences from 7/1/2018 to 6/30/2021.

**SUPPLEMENTAL ANSWER:**

Hampton Veteran Affairs Medical Center, Hampton, VA Board Certified Occupational Medicine Physician; Dates of Employment: 07/5/2022-Present; Title: Director of Employee Health; $237,000.00/year; minimal benefits.

13.     Describe in detail your attempts to mitigate your claimed damages in this matter.

**ANSWER:**     Subject to the objections above, Plaintiff answers: Plaintiff attempted to Salvage his medical career by applying and attempting to transfer to more than 100 graduate medical education programs in Anesthesiology. Additionally, he moved to Chicago to work at Cook County Stroger Hospital, or University of Chicago, whose offers were revoked after those institutions received false and disparaging and defamatory statements from Defendants. Additionally, Plaintiff moved to Shreveport, Louisiana to resume his residency training and research at LSU, specifically its Department of Anesthesiology, but LSU rescinded its offer to do so after Defendants withheld documentation of Plaintiff's prior training and made false and disparaging and defamatory statements to LSU. Plaintiff subsequently obtained a graduate medical education position in the Occupational Medicine program at the University of Illinois, Chicago, and is scheduled to complete that training in June 2021.

**SUPPLEMENTAL ANSWER:**
Plaintiff completed his training in Occupational Medicine, obtained board certification and has secured employment as a practicing physician with the Administration of Veterans Affairs.

14.     Describe in detail how BJH and BJC engaged in any form of harassment toward you at any time, including who committed the harassment, when, and in what way.

**ANSWER:**     Subject to the objections above, Plaintiff further objects that this interrogatory is overbroad and calls for a narrative. Partially answering over objection, without waiving same, Plaintiff states: see the Second Amended Complaint and Plaintiff's July 2022 EEOC Charge of Discrimination. Plaintiff further states that this is topic is proper for inquiry through deposition testimony.

15.     Describe in detail how BJH and/or BJC was involved in any agreement to provide "good references" for you to any other institution or person, including who made such agreement, when, and how that agreement was made.

**ANSWER:**     Subject to the objections above, Plaintiff answers: BJH/BJC employed

21

Plaintiff as a resident in its anesthesia residency program, and it was governed by the ACGME rules which require fair and accurate evaluations and a fair accurate summative evaluation upon transfer out of the program, neither of which were provided by Defendants. Investigation continues.

16.     Describe in detail how you were "forced" to resign from the residency program, as you allege in Count IV of your Complaint, including who forced you to resign, when, and how he or she forced you to resign.

    **ANSWER:**     Subject to the objections above, Plaintiff answers: see the Second Amended Complaint.  When the Plaintiff began to work with the Radiology Department Evers, Benzinger, and Cox orchestrated the harassment of Plaintiff, the generation of false poor performance reviews, and then demanded Plaintiff's resignation from the WU-BJH/BJC Program.  This conduct occurred between the end of 2016 and April 2018.  Plaintiff submitted his resignation after Cox, Evers and Benzinger threatened a sham PHP referral unless Plaintiff resigned.

17.     Describe in detail how BJH and/or BJC was involved with your laboratory, including who, when, and how such persons were involved or in any way related to your laboratory.

    **ANSWER:**     Subject to the objections above, Plaintiff answers: Plaintiff's laboratory was housed at BJH/BJC from February 2017 and remains there at present. BJH/BJC uses the laboratory in the course of patient care, uses the laboratory for research, uses the laboratory to obtain grants, and uses the laboratory in other ways to generate income. The Department of Radiology in BJH uses the laboratory, and does Pamela K. Woodard, MD, Hugh Monroe Wilson Professor of Radiology, Sr. Vice Chair, Radiology Research Facilities, Karthik K. Tappa, PhD, Research Scientist, Udayabhanu M. Jammalamadaka, PhD, Research Scientist, and David H. Ballard, MD, Resident, Radiology.  Investigation continues.

18.     Describe in detail what equipment from your laboratory was taken by BJH and/or BJC, including what specific items were taken, when, by whom, and how it is they were taken or that you know they were taken.

    **ANSWER:**     Subject to the objections above, Plaintiff answers that the Defendants converted the following property, among others, owned by SBI in which the Plaintiff held a 50% ownership interest at all relevant times and in which he is now the 100% owner: Makerbot 5th Generation 3D printer; Makerbot Digitizer (3D scanner); Hyrel system 30 M 3D printer (and all print heads), Extrusion bot (2)' Cyberware 3D scanner (2); compact incubator; scale; hotplate stirrer; vortex mixer; and mini centrifuge, additional lab supplies

and reagents, and other material. Investigation continues. March of 2017 is when the lab was converted. All property was owned by SBI at the time of the conversion. The lab was converted by Defendants when the lab was moved to the hospital in the Department of Radiology and the researcher employees of the lab were hired by the Department of Radiology. Investigation continues.

19.     Describe in detail the specific benefits you conferred upon BJH and/or BJC at any time, in support of Counts VI and VII asserted in the Complaint.

**ANSWER:**     Subject to the objections above, Plaintiff answers: Among other financial and reputational benefits, the prestige and economic benefit of the lab operating on the BJH/BJC campus, including profits and income generated by the lab housed on the BJH/ BJC campus, grants earned, papers and other research performed at the lab, as well as the economic benefits provided to the hospital from the opportunity costs provided through the lab's increased efficiency for other departments in the hospital and in patient care, as well as the equipment Weisman brought from LSU, and the researchers in the lab.

20.     Describe in detail how BJH and/or BJC provided false information or false evaluations about you to anyone else, including who provided any such false information, to whom it was provided, when it was provided, and in what way.

**ANSWER:**     Subject to the objections above, Plaintiff states: BJH/ BJC Program supervisors Richard Benzinger, Alex Evers, Thomas Cox, and Douglas Thompson provided false information and false evaluations to, among others, Yale Faculty Roberta Hines and Jefferey Schwartz, University of Chicago faculty Peter Nagle and Jerry Klafta in phone conversations. They as well as others in the Program conspired together to falsify records so that they would reflect that Jeffery Weisman was not progressing in the BJH/BJC Program.  Investigation continues as to other programs that BJH/BJC spoke to about Plaintiff.  Investigation continues.

**SUPPLEMENTAL ANSWER:** Defendant BJH participated and conspired with Washington University Defendants to lie to the ACGME by representing that they had provided a summative evaluation for Dr. Weisman in response to all requests.

Respectfully Submitted,

THE ELSTER LAW OFFICE, LLC

/s/ Henry Elster
Henry Elster, MO # 62875MO
225 S. Meramec, #325
Clayton, Missouri 63105
(314) 727-0868
henry@elsterlaw.com

*Counsel for Plaintiffs*

and

MAREK WEISMAN LLC

/s/ Rachel C. Rutter
Sherman Marek, *admitted pro hac vice*
Rachel C. Rutter, MO # 69313
Kelly Kirkbride, *admitted pro hac vice*
55 E Monroe Street, Suite 3800
Chicago, IL 60603
(312) 470-7662
rrutter@marekweisman.com
smarek@marekweisman.com
kkirkbride@marekweisman.com
*Counsel for Plaintiffs*

## **VERIFICATION**

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

JEFFREY WEISMAN

**<u>Certificate of Service</u>**

I certify that I served this document by emailing a copy to each person to all defense counsel of record on September 9, 2022.


/s/ Rachel C. Rutter