**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFERY WEISMAN and STRATEGIC BIOMEDICAL, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:19-cv-00075-JAR |
| BARNES JEWISH-HOSPITAL, BJC HEALTHCARE, WASHINGTON UNIVERSITY, DR. ALEX EVERS, DR. RICHARD BENZINGER, and DR. THOMAS COX, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. SCOTT GILBERT**

Come now Defendants Barnes Jewish-Hospital, BJC Healthcare, Washington University, Dr. Alex Evers, Dr. Richard Benzinger, and Dr. Thomas Cox (collectively, "Defendants") and in support of their motion to exclude the testimony of Plaintiff Dr. Jeffery Weisman's ("Plaintiff") purported expert witness, Dr. Scott Gilbert ("Dr. Gilbert"), state as follows:

**INTRODUCTION**

An economic expert should use data to form a conclusion, not find data to support a conclusion provided by Plaintiff's counsel. Plaintiff seeks to admit Dr. Gilbert's "expert testimony" regarding the alleged "economic losses to Dr. Weisman whose medical residency (or similar program) in anesthesiology (or similar field) at medical-related institutions associated with the defendants ended mid-2018 such that Dr. Weisman was unable to find another anesthesiology residency." (Exhibit A, Dr. Gilbert's Expert Report). Dr. Gilbert's calculation of Plaintiff's labor earnings losses is a circular analysis of the biased statement of a self-described "advocate" for

Plaintiff, Dr. Alan Kaye[1], for which Dr. Gilbert cherry picked available data in a spreadsheet to support. Dr. Gilbert's testimony is overly speculative and is not the product of any reliable methodology. Accordingly, Dr. Gilbert's testimony does not comport with the requirements set forth by Federal Rule of Evidence 702 and *Daubert*. Defendants respectfully request this Court to issue an order barring any testimony from Dr. Gilbert.

## BACKGROUND

### I. Plaintiff's Claim for Economic Damages Related to His Career Earnings

Plaintiff is seeking monetary damages, in part, for the "many millions of dollars in future income." (Dkt. 86, ¶94). To support this claim for damages, Plaintiff seeks to rely on the expert testimony of Dr. Gilbert, who purports to testify regarding Plaintiff's labor earnings losses. However, instead of conducting his own research into earnings projections, Dr. Gilbert relied on information regarding full-time earnings in the United States for all male physicians and surgeons and information regarding all medical school faculty compensation, reportedly provided by Dr. Kaye, to support a salary range of $500,000-$750,000 provided by Plaintiff's former counsel. (Ex. A, p. 6). Yet, Dr. Gilbert relied on Dr. Kaye's opinion without knowing the basis for Dr. Kaye's opinion. (Exhibit B, Dr. Gilbert's Deposition, p. 66:12-18).

Dr. Gilbert admits that "good inputs will produce relevant outputs." (Ex. B, p. 9:1-2). Yet, Dr. Gilbert admits he does not know where the $500,000-$750,000 salary range came from. (*Id.*, p. 110:25-111:3). Furthermore, Dr. Gilbert also assumed that Plaintiff would complete the anesthesiology residency without any foundation for this assumption. (*Id.*, p. 11:10-14; 12:6-7). Dr. Gilbert made this assumption without knowing the percentage of anesthesiology residents that successfully complete a residency. (*Id.*, p. 12:8-10). Dr. Gilbert did not consider whether Plaintiff

---

[1] Dr. Kaye was retained by Plaintiff as an expert witness for this case.

2

would have left the program to pursue other business interests, such as his parallel career as the owner of SBI. (*Id.*, p. 38:4-15). Nevertheless, Dr. Gilbert admitted there was a possibility that Plaintiff could have resigned from his anesthesiology residency to work entirely on SBI, but he did not factor that into his lost earnings analysis. (*Id.*, p. 38:16-20). Accordingly, Dr. Gilbert does not set forth a reliable methodology used in reaching his conclusions and does not set forth an adequate foundation in order to make his testimony admissible.

   II.   **Dr. Gilbert's Conclusions**

Neither Dr. Kaye nor Dr. Gilbert can confirm the spreadsheet's accuracy, and Dr. Kaye's e-mail is in direct conflict with the spreadsheet data and Dr. Kaye's own salary. Dr. Kaye, as the Chair of the Department of Anthesiology at Louisiana State University, New Orleans with over 21 years of experience as a chairman, had a salary of $450,000. (Exhibit C, Kaye Depo., p. 12:6-9; 170:6-8). Yet, Dr. Kaye boldly asserts that Plaintiff's projected first-year salary range was $500,000-$750,000. (Ex. A, p. 6). According to the spreadsheet of 2019-2020 anesthesiology compensation, not even the 75th percentile of instructors, assistant professors, and associate professors make at least $500,000 per year. (Exhibit D, Dr. Kaye Spreadsheet regarding 2019-2020 anesthesiology compensation). In fact, looking at "Total Anesthesiology" on the spreadsheet of 2019-2020 anesthesiology compensation, only the department "Chairs" and the 75th percentile of department "Chiefs" earn over $500,000 per year. (*Id.*).

Dr. Gilbert opined that Plaintiff's total present value of labor earnings losses ranged from $7,950,055 to $9,857,789. (Ex. A, p. 3). Dr. Gilbert did not assign a probability to this range to determine which scenario is more likely. (Ex. B, p. 52:9-15). In reaching this conclusion, Dr. Gilbert relied only on information provided by Dr. Kaye, a table that provides salaries for <u>all</u> male physicians and surgeons, and an email from Plaintiff's former counsel in which Dr. Kaye confirms

3

$500,000-$750,000 is a reasonable range for current compensation rates for board-certified anesthesiologists. (Ex. A, p. 6). His opinion is based solely on an e-mail he received from Dr. Kaye[2] and a spreadsheet[3] provided by Dr. Kaye. Those two data sources are irreconcilable.

Dr. Gilbert states it is "reasonable" to assume that Plaintiff would be at either the 75th or 90th percentile of earnings. (Ex. A, p. 6). However, Dr. Gilbert relied on Dr. Kaye's opinion without knowing the basis for the opinion. (Ex. B, p. 66:12-18). While Dr. Gilbert provided a general rule that the more specific data he has, the better his analysis could be,[4] he did not seek out or use specific data about Plaintiff for his report. Instead of doing research regarding anesthesiologists (specifically those specializing in research and academia) in a particular location (or range of locations), Dr. Gilbert cherry picked his data to support a salary range provided by Plaintiff's counsel which is not properly related to Plaintiff. Dr. Gilbert also improperly relied on Table 1073 of the publication Full Time Earnings 2017, a table that provides salaries for **all male physicians and surgeons**,[5] regardless of their specialty or geographic location.[6] Moreover, Dr. Gilbert "assumed" that Plaintiff would be in the 75th and 90th percentile of all of these male

---

[2] (Ex. A, p. 6).
[3] (Ex. D).
[4] (Ex. B, p. 11:5-7).
[5] This chart includes all male physicians and surgeons, including neurosurgeons, orthopedic surgeons, and cardiovascular surgeons. It is completely improper to use the salaries of these doctors to project Plaintiff's unknown future in anesthesiology.
[6] Table 1073 is across the entire United States. Plaintiff was a resident in St. Louis, Missouri and he currently works in Virginia. Dr. Gilbert "didn't make any additional or special assumptions about a location" (Ex. B, p. 107:4-22) even though Dr. Gilbert acknowledged that "income for the same profession can vary significantly across the United States." (*Id.*, p. 108:2-5).

physicians and surgeons[7] in just his first year of practice[8] based solely on a salary range provided by Plaintiff's counsel and reportedly merely confirmed by Dr. Kaye. (Ex. A, p. 6). Dr. Gilbert simply selected datapoints to support a salary range proposed by Plaintiff's counsel instead of researching economic data to determine Plaintiff's labor earning losses.

### III.     Dr. Gilbert's Lack of Methodology and Specificity

How Dr. Gilbert arrived at this opinion is, to say the least, unclear. He provides no independent basis or methodology for reaching his labor earning losses other than regurgitating information provided to him from Plaintiff's former counsel. For example, Dr. Gilbert readily admits that in calculating his assumption that Plaintiff would draw a salary between the 75th percentile and the 90th percentile, he relied on Dr. Kaye's opinion without knowing the basis for Dr. Kaye's opinion. (Ex. B, p. 66:12-18). Dr. Gilbert has no specific information regarding Plaintiff that allowed him to form an opinion regarding Plaintiff's potential salary range. (*Id.*, p. 71:4-17). Instead, Dr. Gilbert relied exclusively on Dr. Kaye's salary range. (*Id.*, p. 71:4-17). Dr. Gilbert admitted he did not see any data that would support a beginning salary like what Dr. Kaye suggested. (*Id.*, p. 148:25-149:6). Dr. Gilbert further testified he could not validate "the accuracy of Dr. Kaye's stated range of salaries or incomes for Dr. Weisman," nor could Dr. Gilbert testify to the reliability of the salary range. (Ex. B. p. 36:2-8). In fact, Dr. Gilbert could not

---

[7] This assumption is not based on reality. Plaintiff ranked in the bottom third of his class in medical school (Ex. B, p. 129:10-130:7) and Plaintiff's test results on the AKT test, used to determine the level of knowledge of the trainees, put Plaintiff in the bottom 5% of his residency class as well. (Exhibit E, Weisman September 3, 2022 Deposition., p. 61:25-62:22). Dr. Gilbert testified he reviewed Plaintiff's deposition so this information should not be a surprise. (Ex. B, p. 13:9-21).
[8] Notably, Plaintiff was older than traditional first year physicians or surgeons. Prior to medical school, Plaintiff received his Master's in Molecular and Cellular Biology (one-year program), his Master's in Finance (two-year program), his Juris Doctorate (three-year program), and his Ph.D. in Biomedical Engineering (four-year program). Dr. Gilbert does not consider, or even mention, that Plaintiff is approximately ten (10) years older than a traditional first year physician or surgeon. (Exhibit F, JW00063910).

5

determine where Plaintiff would fall within the salary range because Dr. Gilbert did not have data specific to Plaintiff's aptitude. (*Id.*, p. 76:16-77:15).

Dr. Gilbert's testimony lacks foundation, and there is no methodology apparent in reaching his conclusions. While he went back and forth as to where Plaintiff would fall within the salary range provided by Dr. Kaye, Dr. Gilbert admits that he has no data specific to Plaintiff to determine a reasonable salary range given Plaintiff's medical abilities. Accordingly, not only is Dr. Gilbert's testimony inadmissible as expert testimony for his failure to follow any approved methodology in reaching his valuation opinion, but it is simply too speculative to be considered reliable.

## ARGUMENT

"The proponent of an expert's testimony … must establish by a preponderance of the evidence that the requirements for admission of the testimony have been satisfied." *PNC Bank, N.A. v. Gannon P'ship 19, L.P.*, Case No. 4:11cv0692 TCM, 2012 WL 13055949, at *3 (E.D. Mo. June 20, 2012). Further, "failure to provide a factual basis for the opinion renders the valuation meaningless." *Id.* (citing *Rich v. Eastman Kodak Co.*, 583 F.2d 435, 437 (8th Cir. 1978)). Additionally, experts are required to apply "principles and methods reliably to the facts of the case." Fed.R.Evid. 702. An expert cannot parrot the opinions of other experts. *Hill v. Fikes Truck Line, LLC*, No. 4:11-CV-816 CAS, 2012 WL 5258753, at *4 (E.D. Mo. Oct. 24, 2012).

For the reasons set forth below, Plaintiff has failed to establish that Dr. Gilbert's testimony meets the requirements for admission. Dr. Gilbert provides no factual basis for the speculative opinion he provides, thus rendering his valuation opinion "meaningless."

**I.   Dr. Gilbert's Testimony is Not Reliable Pursuant to Federal Rule of Evidence 702 and *Daubert*.**

Federal Rule of Evidence 702 sets forth the requirements for expert testimony to be admissible. The testimony must: (1) "help the trier of fact to understand the evidence or to

6

determine a fact in issue;" (2) be "based on sufficient facts or data;" (3) be the "product of reliable principles and methods;" and (4) be "reliably applied" to the facts of the case. Fed.R.Evid. 702. The Eighth Circuit has also adopted a three-part test to analyze the admissibility of expert testimony under this framework. Under this test, the expert testimony must be: (1) "useful to the finder of fact in deciding the ultimate issue of fact"; (2) the proposed witness must be "qualified to assist the finder of fact"; and (3) the evidence must be "reliable or trustworthy in an evidentiary sense." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014).

Dr. Gilbert's testimony must be excluded because it will not be useful to the finder of fact as it is not based on sufficient facts or data, and it is not the product of reliable methods reliably applied to the facts of the case. Because he does not rely on any recognizable or reliable methodology, Dr. Gilbert's opinion is too inexact and speculative to be admitted as an expert opinion. He makes the bare assertion that Plaintiff would have made between $500,000-$750,000 by parroting Dr. Kaye. Dr. Gilbert's opinion rendered in the October 3, 2022 report is wholly unsupported by facts or data, and his methodology in arriving at this conclusion is simply nonexistent. For these reasons, Dr. Gilbert's testimony must be excluded.

  **a. Dr. Gilbert Relied on the Unreliable Email from Dr. Kaye.**

Dr. Gilbert admits he does not know if the data provided by Dr. Kaye was peer-reviewed. (Ex. B, p. 41:19-42:1). In actuality, the data Dr. Gilbert relied upon was given to him by Plaintiff's former counsel. (*Id.*, p. 42:2-12). Dr. Gilbert further testified that he did not take the action necessary to validate the data – purchasing the Association of American Medical Colleges Faculty Salary Report himself. (*Id.*, p. 42:17-43:1). Thus, Dr. Gilbert's opinion is not an independent opinion he formed after examining facts or data, and Dr. Gilbert does not know if Dr. Kaye's underlying opinion is reliable. In fact, Dr. Kaye's opinion is not reliable – Dr. Kaye states that all

7

new residents who just completed their anesthesiology programs make more than he does as the Chair, despite the fact that the spreadsheet of 2019-2020 anesthesiology compensation explicitly demonstrates the contrary. (Dr. Kaye Depo., p. 254:3-6; Ex. D). The spreadsheet of 2019-2020 anesthesiology compensation shows that an academic anesthesiologist at the 25th percentile earns $289,000, which means that 25 percent of the academic anesthesiologists in the United States earn less than or equal to that amount. (*Id.*; Ex. C, p. 257:10-21). Because Dr. Gilbert did not conduct his own research to confirm the validity of the data, he has no methodology on which to base his conclusion that Plaintiff's labor earning losses are between $7-9 million. Accordingly, Dr. Gilbert cannot testify regarding Plaintiff's labor earning losses.

If an expert's opinion is so "fundamentally unsupported" by facts or data that it "can offer no assistance to the jury," the opinion must be excluded. *Auto Owners Ins. Co. v. Blair Leasing, LLC*, No. 1:19 CV 66 ACL, 2021 WL 2778527, at *4 (E.D. Mo. July 2, 2021) (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001)). An expert must form his own opinion and not adopt wholesale the opinion of another expert. *Hill v. Fikes Truck Line, LLC*, No. 4:11-CV-816 CAS, 2012 WL 5258753, at *3 (E.D. Mo. Oct. 24, 2012). If an expert witness relies on the opinion of another expert, there must be a showing that the underlying opinion is reliable. *Mason v. Safeco Insurance Company of America*, No. 4:09-CV-1081 CAS, at *13 (E.D. Mo. Aug. 23, 2010). Because Dr. Gilbert's opinion is based on the salary information provided by Plaintiff's former counsel, without any evidence of reliability, and is not based on any analysis that Dr. Gilbert conducted, Dr. Gilbert's opinion must be excluded.

      **b.**    **Dr. Gilbert's Conclusions are Too Speculative to be Admissible, as Dr. Gilbert Did Not Apply Any Methodology Based on the Facts of this Case.**

The word "knowledge" set forth by FRE 702 "connotes more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590

8

(1993). As such, "[e]xpert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis." *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (holding that because of "the deficiencies at the core of his opinion," expert witness' testimony "was mere speculation and pure conjecture," and thus inadmissible). An expert opinion cannot sustain a jury's verdict when it "is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable ...." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S.Ct. 2578; *see also Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1108 (8th Cir.1996) (motion for judgment should have been granted because the expert opinion on causation was speculative).

Here, because Dr. Gilbert does not base his opinion on any reliable methodology, facts, or data, his opinion is speculative at best and should be excluded. Dr. Gilbert freely admits that he has no specific information regarding Plaintiff that allowed him to form an opinion regarding Plaintiff's potential salary range. (Ex. B, p. 71:4-17). Dr. Gilbert did not rely upon any data specific to Plaintiff's skills. (*Id.*, p. 76:16-77:15). Dr. Gilbert did not assess Plaintiff's specific life or work life expectancy,[9] but instead took a general average. (Ex. A, p. 28; Ex. B, p. 130:8-17; 131:4-15). Instead, Dr. Gilbert speculated based on the salary range Dr. Kaye provided. (Ex. B, p. 71:4-17). Dr. Gilbert "made assumptions that the 75th and 90th percentile of earnings for physicians and surgeons would be a good match with what I see in Dr. Kaye's opinion, and his disclosed apparently statistical tables. **But that's all I did.**" (*Id.*, p. 100:23-101:2) (emphasis added). In fact, Dr. Kaye never gave an opinion on Dr. Weisman's earnings percentile, and Dr. Kaye has never

---

[9] Dr. Gilbert could not recall exactly what chronic diseases Plaintiff has, but knew of their general existence. (Ex. B, p. 130:8-22.).

9

seen any published studies or literature that identifies qualities of an anesthesiology resident that are predictive of that person's level of income assuming that person successfully completes the residency program. (Ex. C, p. 25:11-17).

Although Dr. Gilbert freely made assumptions speculating that Dr. Weisman would be in the 75th and 90th percentile of earnings for physicians and surgeons, when calculating Dr. Weisman's earnings working in the field of occupational and environmental health, his actual career, Dr. Gilbert assumed that Dr. Weisman would only perform, from an earnings perspective, at approximately the 50th percentile. (Ex. B, p. 99:1-11; 101:3-12). In short, Dr. Gilbert assumes Dr. Weisman will earn an average salary in his current field yet speculates that he would have earned in the top ten to twenty-five percent of all anesthesiologists, a field that Dr. Weisman was struggling in based on his test scores and evaluations. This baseless speculation, relying solely on Dr. Kaye's email, poisons Dr. Gilbert's analysis of Dr. Weisman's labor earnings losses as Dr. Gilbert lowers the percentile of earnings for Dr. Weisman's career in the field of occupational and environmental health yet he inflates Dr. Weisman's speculative career earnings in anesthesiology to the 75th and 90th percentile of earnings.

## **CONCLUSION**

The proffered expert testimony of Dr. Gilbert must be excluded because Dr. Gilbert's conclusions are not supported by any recognizable methodology and are speculative. For the foregoing reasons, Defendants respectfully request that the Court grant its motion to exclude the testimony of Dr. Gilbert, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

HUSCH BLACKWELL, LLP

By: /s/ *Michael P. Nolan*
Michael P. Nolan, Bar No. 54046MO
Theresa M. Mullineaux, Bar No. 70267MO
Blake R. Armstrong, Bar No. 72683MO
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505
Michael.Nolan@huschblackwell.com
Theresa.Mullineaux@huschblackwell.com
Blake.Armstrong@huschblackwell.com

*Attorneys for Barnes-Jewish Hospital and BJC Healthcare*

SHANDS, ELBERT, GIANOULAKIS
& GILJUM, LLP

/s/ *Kevin Anthony Sullivan*
Mark J. Bremer #24696MO
Kevin Anthony Sullivan #55140MO
8235 Forsyth Blvd., Suite 700
St. Louis, MO  63105
(314) 241-3963
(314) 241-2509 (fax)
mbremer@shandselbert.com
ksullivan@shandselbert.com

*Attorneys for Defendants Washington University, Thomas Cox, Richard Benzinger, and Alex Evers*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed via the Court's CM/ECF system on this 17th day of February, 2023, and thereby electronically served upon all counsel of record.

/s/ *Michael P. Nolan*

11