UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY WEISMAN and STRATEGIC BIOMEDICAL, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:19-cv-00075-JAR |
| v. | ) ) ) | |
| BARNES JEWISH-HOSPITAL, BJC HEALTHCARE, WASHINGTON UNIVERSITY, DR. ALEX EVERS, DR. RICHARD BENZINGER, and DR. THOMAS COX, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### DEFENDANT BARNES-JEWISH HOSPITAL'S ANSWERS TO PLAINTIFFS' INITIAL RULE 33 INTERROGATORIES

Defendant Barnes-Jewish Hospital ("BJH") answers Plaintiffs' Initial Rule 33 Interrogatories as follows.

### INTERROGATORIES

1. State the full name, employer, job title, of the person signing these interrogatories.

**ANSWER**: **Terra Mouser is BJH's Director of Graduate Medical Education & Medical Staff Services.**

2. How are Your policies to ensure fair, objective, truthful, unbiased evaluations of the performance by students at the School of Medicine and Residents in the anesthesiology department enforced and who is responsible for enforcing them?

**ANSWER**: **BJH objects to interrogatory no. 2 as seeking irrelevant information, as asking for legal conclusions, and as vague and ambiguous as to the terms "students" and "department." Subject to and without waiving any objections, BJH does not evaluate residents in the anesthesiology graduate residency program (the "Program"). Through BJH's partnership with Washington University (the "University") through the Graduate Medical Education Consortium ("GME Consortium"), physicians representing the University evaluate residents' performance in the Program. As outlined in the**

Pltfs. Ex. 6

**Memorandum of Appointment ("MOA"), disputes with those evaluations can be raised and are reviewed by multiple individuals, as outlined in section 20 of the MOA. Additionally, residents can report any concerns of unfair treatment to BJH's human resources department or other management at BJH, who will take steps to investigate the concerns, as further outlined in sections 20-22 of the MOU.**

3. State how the behavior of Your supervisory staff is monitored for their enforcement and compliance with Your policy against harassment, general bullying and/or harassment, in the workplace, clinical rotations, classroom, cyber environment and at home?

**ANSWER**: **BJH objects to interrogatory no. 3 as seeking irrelevant information, as asking for legal conclusions, and as vague and ambiguous as to the terms "supervisory staff," "monitored," and "general bullying." Subject to and without waiving any objections, BJH trains its own supervisory staff and human resources personnel on procedures for preventing harassment in the workplace and equips its human resources department to investigate and appropriately resolve concerns raised by BJH employees. Employees who experience or witness conduct that could be deemed harassment in the workplace are instructed to report such conduct to their supervisors, human resources, or any BJH management.**

4. For the ten years prior to June of 2018, identify each individual who made any type of complaint (written, verbal, formal, informal), or who expressed any concern about Richard Benzinger, Thomas Cox, Alex Evers, vis-a-vis inappropriate conduct or behavior that related to harassment or general bullying. Include in your response the position held by the individual complaining, the date the complaint was made or concern expressed, whether the complaint or concern was communicated verbally or in writing, and the individual(s) to whom the complaint was made or concern expressed. If the Defendant responded in some way to the complaint, describe its response in detail and identify all persons involved.

**ANSWER**: **BJH objects to interrogatory no. 4 as seeking irrelevant information, as overly broad and unduly burdensome, not properly limited in scope or time by asking for information dating back ten years, as not proportional to the needs of the case, and seeking confidential information about third parties who have no connection to this matter, in violation of those third parties' fundamental right to privacy.**

5. Have You ever reprimanded or disciplined Richard Benzinger, Thomas Cox, Alex

Evers, for harassment and/or bullying If so, list the allegation(s), the dates of the reprimand or discipline, and the nature of the reprimand or discipline.

**ANSWER**: **BJH objects to interrogatory no. 5 as seeking irrelevant information, and as vague and ambiguous as to the terms "reprimand" and "bullying." Subject to and without waiving any objections, BJH has no record of issuing any documented discipline or reprimand to Drs. Benzinger, Cox, or Evers.**

6. Were you named or covered under any policy or policies of liability insurance at the times alleged in the complaint? If so, state for each policy:

   a. The name of the insurance company;

   b. The policy number;

   c. The effective policy period;

   d. The maximum liability limits for each person and each occurrence, including umbrella and excess liability coverage; and

   e. The named insured(s) under the policy.

**ANSWER**: **BJH objects to interrogatory no. 6 as seeking irrelevant information and not proportional to the needs of the case. Subject to and without waiving any objections, BJH has liability insurance through AIG Insurance that may be applicable to this case.** *See* **documents produced in response to Plaintiffs' requests for production reflecting same.**

7. From the beginning of his residency, was the Plaintiff ever deficient in his academic knowledge, clinic knowledge, clinical skills, core competencies, or social skills? If so, identify the date, the nature of the deficiencies and whether he was issued any discipline or warning due to the deficiencies just identified?

**BJH objects to interrogatory no. 7 as seeking irrelevant information, as asking for legal conclusions, and as vague and ambiguous as to the terms "academic knowledge," "clinic knowledge," and "social skills." Subject to and without waiving any objections, BJH does not evaluate residents' performance in the Program. Through the GME Consortium, BJH partners with the University, and physicians representing the University manage the Program, including evaluating residents' performance, including clinical and academic competencies. Thus, to the extent Plaintiff was deficient in knowledge or skills or issued any warnings or notice of his deficiencies in the Program, BJH did not identify or issue any**

**such deficiencies or notices.**

8. Are there any facts that would support the dismissal of Plaintiff that were first discovered after his resignation? If so, state a) what those facts are; b) When and how You learned of them; and c) the names and titled of all persons having knowledge of all such facts, if any.

**ANSWER**: **BJH objects to interrogatory no. 8 as seeking irrelevant information, as asking for legal conclusions, and as vague and ambiguous as to the terms "dismissal." Subject to and without waiving any objections, BJH is not aware of any facts discovered only after Plaintiff resigned from the Program that it would have relied on to dismiss Plaintiff from the Program.**

9. Identify any reimbursements made to the Plaintiff to cover his costs for travel, lodging, meals, or any other expenses when he visited Washington University/ Barnes to interview for a residency position.

**ANSWER**: **BJH objects to interrogatory no. 9 as seeking irrelevant information and as not proportional to the needs of the case. Subject to and without waiving any objections, BJH did not reimburse Plaintiff for any costs or expenses related to his visits to the University or BJH to interview for a resident position in the Program.**

10. Identify every faculty member that was charged by Washington University and/or Barnes guidelines to evaluate Plaintiff's performance during his residency.

**ANSWER**: **BJH objects to interrogatory no. 10 as vague and ambiguous as to the terms "charged" and "Barnes guidelines to evaluate." Subject to and without waiving any objections, BJH does not evaluate residents in the Program. Through the GME Consortium, BJH partners with the University to manage and administer the Program, including implementing appropriate standards and guidelines for evaluating residents' performance in the Program. During Plaintiff's participation in the Program, Richard Benzinger was the Program Director, whose responsibilities included implementing appropriate guidelines for evaluating Plaintiff's performance.**

11. Identify each University, Medical School, Program Director, hospital, licensing board and/or any other person that You spoke with concerning Plaintiff's performance as a

resident in the residency program at Washington University/ Barnes Jewish Hospital from January 2018 to the present.

**ANSWER**: **BJH objects to interrogatory no. 11 as seeking irrelevant information and as seeking privileged information. Subject to and without waiving any objections, BJH states that it spoke with University representatives Dr. Richard Benzinger, Dr. Alex Evers, and Dr. Thomas Cox about the evaluation of Plaintiff's performance as a resident in the Program. BJH is not aware of any BJH representative speaking with any entity or person, other than those affiliated with the University, about Plaintiff's performance as a resident.**

12. Identify any and all individuals who participated in any investigation initiated by or for Defendant in response to Plaintiff's complaints of harassment in an email to Associate Professor Thomas Graetz on April 2, 2018 and describe the actions of such individuals in detail.

**ANSWER**: **BJH objects to interrogatory no. 12 as seeking irrelevant information, seeking information protected by attorney-client privileged, and as not proportional to the needs of the case. Subject to and without waiving any objections, BJH has no knowledge of any investigation related to an email to Associate Professor Thomas Graetz on April 2, 2018.**

13. Identify each resident placed on probation from 2010 to present at the Washington University/ Barnes.  For each, include: the number of rotations completed before being placed on probation, and the remediation requirements for each such resident.

**ANSWER**: **BJH objects to interrogatory no. 13 as seeking irrelevant information, overly broad, not properly limited in time or scope, as vague and ambiguous as to the terms "probation" and "remediation requirements," and seeking confidential information about third parties who have no connection to this matter, in violation of those third parties' fundamental right to privacy.**

14. Identify the procedures for placing a Resident on probation and/or assigning any designation in their file that the Resident was on probation which were in place in January 20, 2017, and state whether any changes to the probation procedures were put in place after that date to the present.

**ANSWER**: **BJH objects to interrogatory no. 14 as seeking irrelevant information,**

**overly broad, not properly limited in time or scope, and as vague and ambiguous as to the terms "probation," "assigning any designation," and "probation procedures." Subject to and without waiving any objections, BJH does not place residents on probation.**

15. Describe (including names and positions of the individuals involved, and the relevant dates) what steps, if any, Defendants took to prevent retaliation against Plaintiff after he questioned his evaluations and treatment at your program.

**ANSWER**: **BJH objects to interrogatory no. 15 as seeking irrelevant information, overly broad, not properly limited in time or scope, seeking information protected by the attorney client privileged or work product doctrine, and as vague and ambiguous as to the phrase "treatment at your program." Subject to and without waiving any objections, BJH states that Plaintiff Weisman contacted BJH's Director of Human Resources, Nicole Erter, on or around January 10, 2018 to seek her assistance in preparing for a meeting with various physicians in the Program, at which time Weisman also expressed concern to Ms. Erter that he believed he was being improperly evaluated by the Program physicians. After Ms. Erter met with Weisman on January 10, 2018, she consulted with BJH's chief medical officer, Dr. Katherine Henderson, who coordinated with the University to ensure Weisman was not being treated unfairly, including that there was no retaliation for Weisman's contact with BJH's human resources.**

16. State each time the Plaintiff was placed (or threatened to be placed) on probation, kept on probation, or removed from probation and the reason why each event occurred. Please include in the explanation whether knowledge of Plaintiff's previous probationary statuses was used to effect later decision on probation statuses.

**ANSWER**: **BJH objects to interrogatory no. 16 as seeking irrelevant information, overly broad, not properly limited in time or scope, and as vague and ambiguous as to the terms "probation" and "probationary statuses." Subject to and without waiving any objections, BJH does not place residents on probation.**

17. State the names and last known addresses of all residents at Washington University/Barnes that did not complete their residency and were terminated or resigned under threat of termination. Include the number of months of schooling or rotations remaining before termination or resignation, and state whether each such resident transferred and if they were provided with a letter of recommendation.

**ANSWER**: **BJH objects to interrogatory no. 17 as seeking irrelevant information, as overly broad and unduly burdensome, not properly limited in scope or time, seeking confidential information about third parties who have no connection to this matter, in violation of those third parties' fundamental right to privacy, and as not proportional to the needs of the case.**

18. Identify all policies and/or procedures for sharing school records and/ or Resident files with another University or Hospital.

**ANSWER**: **BJH objects to interrogatory no. 18 as seeking irrelevant information, overly broad, and as vague and ambiguous as to the terms and phrases "sharing school records" and "Resident files." Subject to and without waiving any objections, BJH states that pursuant to BJH's standard practices, any request for a resident's records related to his or her participation in a residency program is forwarded to the University to handle.**

19. State the reason(s) that Plaintiff Jeff Weisman was asked to resign from Washington University. If the answer included course failures, include why specifically he was failed from any such courses and include the name and titles of individual involved. If the answer includes social skills include the name and titles of individuals involved in making any such determination.

**ANSWER**: **BJH objects to interrogatory no. 19 as seeking irrelevant information, overly broad, calling for speculation, and vague and ambiguous as to the terms "course failures" "individual involved," and "social skills." Subject to and without waiving any objections, this interrogatory does not pertain to BJH, as it asks specifically for information related to the University.**

20. Identify all persons who you believe to have knowledge of the facts of the occurrence and/or injuries described in the Complaint.

**ANSWER**: **BJH objects to interrogatory no. 20 as overly broad and unduly burdensome, and as vague and ambiguous as to the terms "occurrence" and "injuries." Subject to and without waiving any objections, BJH is aware of and believes the following individuals have knowledge related to Plaintiff Weisman's participation in the Program.**

- **Plaintiff Jeffery Weisman**
- **Terra Mouser**
- **Nicole Erter**
- **Dr. Katherine Henderson**
- **Dr. Alex Evers**

- **Dr. Richard Benzinger**
- **Dr. Thomas Cox**
- **Dr. Rebecca McAlister**
- **Tia Drake**

21. Please identify by name and address all witnesses who you will call to testify at trial and state the subjects on which the witness will testify. This is a continuing request and Defendant's answer must be updated as discovery progresses.

**ANSWER**: **BJH objects to interrogatory no. 21 as seeking privileged information and as premature at this stage of the litigation. Subject to and without waiving any objections, BJH has not yet identified who it will call to testify at trial. BJH will supplement its response or provide a list of witnesses as necessary as the litigation progresses.**

22. Identify the inventory and property of the Lab at the time Washington University took possession of it including, but not limited to: specifications, drawings, machines, tools, equipment, material, patent applications, grant applications, academic papers in progress, and any other thing of value.

**ANSWER**: **BJH objects to interrogatory no. 22 as overly broad, as seeking irrelevant information, and as vague and ambiguous as to the terms "specifications" and "material." Subject to and without waiving any objections, this interrogatory does not appear to be addressed to BJH. Moreover, BJH has no knowledge of the University taking possession of the Lab.**

23. Identify any projects or research performed by Plaintiff's Lab with and/or in partnership or joint venture with any department at Washington University and/or a partnership or joint venture with any other private company or government entity through the present.

**ANSWER**: **BJH objects to interrogatory no. 23 as overly broad, as seeking irrelevant information, and as vague and ambiguous as to the terms "projects" and "joint venture." Subject to and without waiving any objections, this interrogatory does not appear to be addressed to BJH. Moreover, BJH has no knowledge of any projects or activity related to the Lab and was never engaged in a partnership of joint venture with Plaintiff or the Lab.**

24. Describe each grant application submitted for work ongoing in the Lab, which grants were received, and state the value of each grant.

**ANSWER**: BJH objects to interrogatory no. 24 as overly broad, and as seeking irrelevant information. Subject to and without waiving any objections, BJH has no knowledge of any grants or activity related to the Lab.

25. Identify all sales, royalties, profits, contracts, joint ventures and any other source of income for the Lab from 2016 to present.

**ANSWER**: BJH objects to interrogatory no. 25 as overly broad, and as seeking irrelevant information. Subject to and without waiving any objections, BJH has no knowledge of any activity related to the Lab.

As to Objections,
HUSCH BLACKWELL, LLP

*/s/ Carrie Claiborne*
Kate M. Leveque, No. 58822MO
Carrie Claiborne, No. 62801MO
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
Tel. 314-480-1500
Fax 314-480-1505
Kate.Leveque@huschblackwell.com
Carrie.claiborne@huschblackwell.com

*Counsel for Defendants Barnes-Jewish Hospital and BJC Healthcare*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically served upon counsel of record on January 19, 2021

*/s/ Carrie Claiborne*

BARNES JEWISH HOSPITAL

By: *Terra Mouser* (signature)

Name/Title: <u>Terra Mouser, Director</u>
<u>Graduate Medical Education and</u>
<u>Medical Staff Services</u>

Under the penalties perjury provided by law, the undersigned certifies that the statements set forth in the document entitled "Defendant Barnes-Jewish Hospital's Answers to Plaintiff's Initial Rule 33 Interrogatories" are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she believes the same to be true.