# AMERICAN COLLEGE OF LEGAL MEDICINE

Executive Office · 515 N Dearborn St. Chicago, IL 60654
Phone: 312-624-9681· Fax: 312-670-3646
Website: https://www.aclm.org · Email: info@aclm.org

Hon. John A. Ross, District Court Judge
Thomas F. Eagleton U.S. Courthouse
111 S. 10th Street, Suite 12.148
St. Louis, Missouri 63102

    Re:    *Weisman, et al. v. Barnes Jewish Hospital, et al.,* No. 4:19-cv-75-JAR
              Application for Leave to File Letter Brief as *Amicus Curiae* and Letter Brief

Dear Honorable Judge Ross,

      The American College of Legal Medicine ("ACLM") requests permission to file this Amicus Curiae letter in support of Plaintiffs' position, in the above-captioned action, that Memorandums of Appointment (MOAs) are enforceable contracts in the context of graduate medical education (GME) in the United States. As an organization intimately familiar with contract law and its application in healthcare, we believe that acknowledging the binding contractual nature of MOAs is crucial to ensure fairness, legal clarity, and protection of the rights and obligations of all stakeholders, which include not only individual medical residents and teaching hospitals, but also the federal government, patients, and the public as a whole.

## **Interest of Amicus**

      Founded in 1960, the ACLM is the official organization for professionals who focus on important issues where law and medicine converge. The ACLM is a professional community including physicians, attorneys, dentists, healthcare professionals, administrators, scientists and others with a sustained interest in medical legal affairs, medical economics, relevant health-related legislation and those public policy issues affecting patient care delivery in this country. Through its medical legal resources the ACLM educates and assists healthcare and legal professionals, advances the administration of justice, influences health policy, promotes research and scholarship, and improves healthcare including GME. In addition to other periodicals, the ACLM publishes the widely-recognized Journal of Legal Medicine which publishes scholarly articles addressing healthcare issues. ACLM is the largest organization of dually trained physician attorneys ("MD-JDs") in the United States and its membership includes a number of preeminent world-renown medical and legal scholars.

      Medical education in general, and issues relating to resident physicians in particular, have long been important areas of interest to ACLM. This is reflected by the many articles published in our journal on these subjects. *See, e.g.*, Chantel Aftab et. al., Allocation of State Legislative Funding of Graduate Medical Education (GME) in Nevada, 40 J. Leg. Med. -- (2020); Robert A. Bitonte, et. al., Mandatory Medical Legal Training in Postgraduate Residency Programs, 40 J. Leg. Med. – (2020); Bobbie Ann A. White et. al., Historical Trajectory and Implications of Duty-Hours in Graduate Medical Education, 39 J. Leg. Med. – (2019); Emily A. Benfer, Educating the Next Generation of Health Leaders: Medical-Legal Partnership and Interprofessional

Graduate Education, 35 J. Leg. Med. – (2014); Elizabeth Tobin Tyler, et. al., Medical-Legal Partnership in Medical Education: Pathways and Opportunities, 35 J. Leg. Med. – (2014); Lindsay Evans, Regulatory and Legislative Attempts at Limiting Medical Resident Work Hours, 23 J. Leg. Med. – (2002); Justin L. Ward, Medical Residents: Should They Be Held to a Different Standard of Care?, 22 J. Leg. Med. – (2001); Chad D. Kollas, Exploring Internal Medicine Chief Residents' Medicolegal Knowledge, 18 J. Leg. Med. – (1997); Dorothy J. McNoble, Expanded Liability of Hospitals for the Negligence of Fatigued Residents, 11 J. Leg. Med. – (1990); Anthony J. Scanlon, Learning to Heal: The Development of American Medical Education, 7 J. Leg. Med. – (1986).

Indeed, our journal's articles on those subjects and others have been cited as reliable authority in dozens of published federal and state court decisions. *See, e.g., State v. Jackson*, 356 So.3d 1063, 1068 (La. App. 1 Cir. Nov. 16, 2022); *Yanes v. Martin*, 464 F. Supp.3d 467, 473 n.15 (D.R.I. 2020); *Carter v. Reese*, 148 Ohio St. 3d 226, 241 (Ohio 2016); *Kordus v. Montes*, 2014 WY 146, P19 (Wyo. 2014); *Fid. & Guar. Life Ins. Co. v. Brooks*, 2014 U.S. Dist. Lexis 198844, *7 (N.D. Ga. Mar. 7, 2014); 614 Pa. 335, 338 n.3 (Pa. 2012); *Sucesion De Don Fancisco Torres Rivea v. R.J. Reynolds Tobacco Co.,* 2007 PR App. Lexis 607, *26 n.16 (PR San Juan 2007); *Hooper v. Thrifty Payless, Inc.,* 2002 Cal. App. Unpub. Lexis 11715, **10, 13 n. 6, 20 (Cal. App. 3 Dist. Dec. 17, 2002); *Ass'n of Am., Physicians & Surgeons, Inc. v. United States FDA,* 226 F.Supp.2d 204, 216 n.20 (D.D.C. 2002).

Additionally, ACLM files *amicus* briefs in cases of interest. For example, we filed an *amicus* brief in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), the United States Supreme Court case that set the standard for admissibility of expert testimony and has been cited in more than 35,000 subsequent court decisions. ACLM also submitted *amicus* briefs to the Supreme Court in *Gonzalez v. Oregon*, 546 U.S. 243 (2006); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); *Kentucky Assoc. of Health Plans Inc., v. Miller*, 538 U.S. 329 (2003); and *Bricker v. Sceva Speare Mem. Hosp.*, 404 U.S. 995 (1971). We have filed *amicus* briefs before other courts as well, for example in the cases of *Baxter v. State*, 224 P.3d 1211 (Mont. 2009); *Cicio v. Does*, 321 F.3d 83 (2d Cir. 2003), *vacated*, 542 U.S. 933 (2004); and *Moran v. Rush Prudential HMO, Inc.,* 230 F.3d 959 (7th Cir. 2000), *aff'd*, 536 US. 355 (2002).

## Concerns of ACLM in this Case

We are concerned about the nationwide implications of Defendants' arguments that they have no contractual obligations to medical residents like Dr. Jeffery Weisman, who happens to be a Fellow of the ACLM, and that the MOA drafted and presented by Washington University and signed by Dr. Weisman is not an enforceable contract (BJH Mem. Dkt. 277, at 8, 13-14, 17; WU Mem. Dkt. 267, at 6, 21-24; BJH Mem. Dkt. 304, at 2).

We strongly disagree with Defendants' proposition. Medical residents, as doctors in training, enter into MOAs with teaching hospitals, medical schools, or both, depending on the design of the particular residency program. The agreements outline the terms and conditions of training and employment, including responsibilities, compensation, benefits, and other crucial provisions. By treating MOAs as contracts, they operate as an essential framework for analyzing and enforcing the rights and duties of both residents and program administrators. Residents gain

2

legal protections including duty hour limits (Dr. Weisman MOA ¶13), supervision (MOA ¶14), completion of training (MOA ¶18), non-discrimination (MOA ¶33), and due process (MOA ¶19). Institutions gain valuable medical services for a specified period under detailed terms. Treating MOAs as contracts ensures the parties have a clear understanding of their rights and duties, fostering accountability and fairness, rather than a formless relationship that may be defined and redefined at will to suit the institution's purposes.

This essential legal framework also protects the rights of third parties. For example, it provides the United States government with assurance that legal principles, and not unfettered discretion, govern its vast financial investment in GME. Medicare pays hundreds of thousands of dollars to train each resident through its Indirect Medical Education (IME) and Direct Graduate Medical Education (DGME) funding programs. Indeed, for 2021 Medicare paid defendant Barnes Jewish Hospital (BJH) $43,988,871 in IME and $26,287,438 in DGME. The government knows, because the MOA says so, that its investment will return a board-eligible physician trained to standards of the Accreditation Council for Graduate Medical Education ("ACGME").

As an aside, we note that WU is paid nothing under IME and DGME and that BJH's receipt of tens of millions of dollars annually in IME and DGME cuts strongly against its arguments to this Court that it has no meaningful role or legal responsibility for training residents like Dr. Weisman (BJH Mem. Dkt. 277, at 8, 17, 18-19; BJH Mem. Dkt. 304, at 3-5, 6-12).

## Legal Position of ACLM

ACLM believes this Court ruled correctly on the MOA issue at the motion to dismiss stage, *i.e.* that if proven as alleged it constitutes a contract binding on Defendants. 2020 U.S. Dist. Lexis 94088, *19-25 (E.D. Mo. May 29, 2020). ACLM also believes that Plaintiffs, for reasons detailed in their response brief and statement of contested facts, have raised genuine issues of material fact on this subject sufficient to deny Defendants' motions for summary judgment and proceed to trial. Indeed, as to the MOA, we believe this Court could find as a matter of law that it is a binding and enforceable contract. We hold this belief not only for reasons stated by Plaintiffs' in their reply brief (Dkt. 298 at 11-14), but for additional reasons as well including the intent and needs of the healthcare system as a whole.

As a threshold matter, we note that BJH makes factually inconsistent arguments on the MOA issue. On one hand, BJH disclaims any role as an educator and characterizes WU as the sole performer of all supervision, evaluation, and record-keeping for residents. BJH Mem. Dkt. 277, at 8-9. On the other hand, BJH implicitly admits to such a role by trying to invoke the protections afforded to educators against educational malpractice claims. *Id*., at 9-10. To ACLM, the second characterization is more accurate: BJH engaged with WU jointly in training Dr. Weisman and other residents.

On the merits, ACLM believes the MOA here satisfies the elements of a binding contract under Missouri law. As stated recently in Gardner v. Echopark Auto., Inc., 2023 U.S. Dist. Lexis 67564, *3-4 (E.D. Mo. Apr. 18, 2023) (citations omitted):

> [T]he essential elements of any contract…are offer, acceptance, and bargained for consideration. Offer and acceptance requires a mutual agreement. A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time…Offer, acceptance, and consideration are each present here. Defendant offered Plaintiff employment in exchange for his agreement to the terms of employment…"

Here, Dr. Weisman's MOA satisfies these requirements. First, there was offer and acceptance. The MOA contains a clear offer by the program to Dr. Weisman specifying his terms of employment and training. He accepted by signing the MOA, demonstrating his intent to be bound by its terms. This offer and acceptance formed the foundational elements of a contract. Second, there was consideration supporting the contract. Dr. Weisman dedicated his time, effort, and professional skills, while the program provided education, training, supervision, a stipend, and other benefits. This mutual exchange satisfies the requirement of consideration necessary for a valid contract.

While different institutions and programs use different labels for their annual training contract with residents, we are not aware of any institution or program that contends there is no contract. So far as we know, that position has not been argued, much less accepted, in any court decision involving a program-resident dispute. *See, e.g., Papin v. Univ. of Miss. Med. Ctr.,* 2021 U.S. Dist. Lexis 180773 (S.D. Miss. Sep. 22, 2021) (contract claims asserted by medical resident); *McDaniel v. Loyola Univ. Med. Ctr.,* 317 F.R.D. 72 (N.D. Ill. Apr. 7, 2016) (same); *Knapik v. Mary Hitchcock Mem. Hosp.,* 2014 U.S. Dist. Lexis 199219 (D. Vt. May 30, 2014).

Defendants' use of the word "Memorandum of Appointment" rather than "Agreement" or "Contract" in the title is irrelevant. "Memorandum of Appointment" is a term often used in the academic world for an employment contract. *See, e.g., Stallworth v. Robison*, 2021 Tex. App. Lexis 9495, *7 (4th Dist. Nov. 24, 2021); *Lee v. Hunter*, 2016 Tex. App. Lexis 11716, *6 (5th Dist. Oct. 27, 2016); *Boensch v. Delta College*, 2011 U.S. Dist. Lexis 34512, *5-6 (E.D. Mich. Mar. 30, 2011); *Hall v. Delta College*, 2009 U.S. Dist. Lexis 129788, *3 (E.D. Mich. Dec. 15, 2009); *Mukerji v. S. Univ. of New Orleans*, 2006 U.S. Dist. Lexis 91113, at *6 n.6 (E.D. La. Dec. 18, 2006).

Here, Defendants' MOA binds them to fulfill the training requirements of ACGME with respect to Dr. Weisman. "The training program will meet the standards of the Essentials of Accredited Residency as approved by the Accreditation Council for Graduate Medical Education (ACGME) for each ACGME accredited training program." Dr. Weisman MOA ¶1. Defendants reaffirm that commitment throughout the contract. *Id.*, ¶¶13, 16. It may be expedient for purposes of this lawsuit to deny any contract with medical residents, thereby denying any obligation to train residents according to nationwide standards, but it is not the reality.

**Conclusion**

MOAs are more than mere formalities or general outlines of what a training institution might or might not do in the course of a resident's GME. To the contrary, MOAs represent binding agreements between residents and program administrators. Recognizing them as such emphasizes the offer, acceptance, consideration, rights, and obligations involved in the relationship. It establishes clear expectations, protects the rights of both parties and others, and promotes professionalism and accountability. Holding institutions accountable for what they say to residents helps ensure fairness, transparency, and an environment conducive to professional growth. This benefits residents, the federal government, patients and the general public, and ultimately institutions themselves.

For the foregoing reasons, ACLM requests leave to file this letter brief as *amicus curiae* and supports Plaintiffs' position that Defendants should be denied summary judgment on any claims or issues relying on their argument that MOAs are not binding contracts.

Respectfully submitted,

*Eli N. Avila, MD, JD, MPH*

Eli Avila, MD, JD, MPH, FCLM, DABLM
ACLM President