**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFERY WEISMAN and STRAGETIC BIOMEDICAL, INC., )<br><br>     Plaintiffs, )<br><br>vs. )<br><br>BARNES JEWISH-HOSPITAL, BJC HEALTHCARE, WASHINGTON UNIVERSITY, DR. ALEX EVERS, DR. RICHARD BENZINGER, and DR. THOMAS COX, )<br><br>     Defendants. ) | Case No. 4:19-cv-75-SEP |

**<u>MEMORANDUM AND ORDER</u>**

Before the Court are Plaintiff's Motion to Reconsider the Denial of Plaintiff's Motion for Summary Judgment on the Barnes Jewish Hospital Counterclaim, Doc. [325], and Counterclaim Defendant Jeffrey Weisman's Motion to Dismiss Counterclaims for Lack of Subject-Matter Jurisdiction Due to Mootness, Doc. [332]. The motions are fully briefed and ready for disposition. For the reasons set forth below, the Motion to Dismiss is granted and the Motion to Reconsider is denied.

## BACKGROUND

Plaintiffs Jeffrey Weisman and Strategic Biomedical, Inc., filed suit against Defendants Barnes-Jewish Hospital, BJC Healthcare, Washington University, Dr. Alex Evers, Dr. Richard Benzinger, and Dr. Thomas Cox for breach of contract, defamation, and other claims related to Weisman's former position as a resident in the WUSM/BJH Graduate Medical Education Anesthesiology Residency Program from July 2016 through June 2018. Defendants BJH and WU each asserted a counterclaim against Plaintiff Weisman under the Missouri Computer Tampering Act (MCTA), Mo. Rev. Stat. §§ 537.525, 569.095-569.099, based on Weisman's viewing and photographing emails on Dr. Benzinger's computer station. After a long and protracted litigation, both sides filed motions for summary judgment regarding their respective claims and counterclaims. The Court granted summary judgment in favor of Defendants on all

1

of Plaintiffs' claims and denied Weisman's motion for summary judgment on Defendants/Counterclaim Plaintiffs BJH and WU's MCTA counterclaims.

On August 24, 2023, Weisman filed a Motion to Reconsider the Denial of Plaintiff's Motion for Summary Judgment on the Barnes Jewish Hospital Counterclaim, Doc. [325], asserting that BJH incurred no compensatory damages based on the alleged computer tampering by Weisman.

On August 25, 2023, counsel for Weisman sent a cashier's check payable to BJH in the amount of $5,000 and a cashier's check payable to WU in the amount of $3,500 to counsel for WU. Doc. [332-3]. The letters accompanying the checks stated that the amounts paid by Weisman were "in full payment of all compensatory damages to which your client could be entitled on its counterclaim" and "that your client now has received all the relief it could receive on its counterclaim." *Id*. The letters acknowledged that BJH and WU asked for "attorney's fees and costs" under the MCTA. *Id*.; *see also* Mo. Rev. Stat. § 537.525.2 ("In any action brought pursuant to this section, the court may award reasonable attorney's fees to a prevailing plaintiff.").

On August 30, 2023, Weisman filed the instant motion to dismiss, arguing that the counterclaims are moot in light of his payments to BJH and WU. Because the second motion is largely determinative, the Court first addresses Weisman's motion to dismiss.

## DISCUSSION

### I.  Weisman's Motion to Dismiss Counterclaims for Lack of Subject-Matter Jurisdiction Due to Mootness

In his motion to dismiss, Weisman states that he has made full payment to BJH and WU for all the damages those entities could possibly recover under their counterclaims. He emphasizes that he has voluntarily tendered payment, which is not an admission of liability. And he claims that no case or controversy now exists and the counterclaims should therefore be dismissed as moot. Doc. [340] at 6-8. Dismissal of the counterclaims is "the only proper course of action for the Court to follow," he maintains; the Court cannot adjudicate the counterclaims or enter judgment for either side. *Id.* at 2.

Weisman further argues that Counterclaim Plaintiffs' request for attorneys' fees and costs does not prevent a finding of mootness. Doc. [333] at 5 (citing *Jarrett v. United States*, 79 F.4th 675, 682 (6th Cir. 2023) ("A dismissal on mootness grounds would not prevent Jarrett from

2

seeking costs or attorney's fees in any event.")).  He notes that "Missouri courts have held that the word "may" [in the statute] confers discretion on courts to choose whether to award attorneys' fees to a plaintiff who prevails on an MCTA claim."  Doc. [340] at 6 (citing *Mihlfeld & Assocs., Inc. v. Bishop & Bishop, L.L.C.*, 295 S.W.3d 163 (Mo. Ct. App. 2009) (trial court did not abuse its discretion in declining to award attorneys' fees to prevailing plaintiffs under the MCTA)); *see* Mo. Rev. Stat. § 537.525.2.  And he unequivocally states that the August 25, 2023, payment was not an admission of liability on BJH and WU's MCTA counterclaims.  *See* Doc. [340] at 4 (Weisman "denies liability"); *id.* at 7 ("Where, as here, the defendant does not concede liability, payment (or the offer thereof) is not a binding admission."); *id.* at 8 ("Weisman's payments did not admit liability, nor did they have that legal effect.").

       In response, BJH and WU argue that Weisman's "cashier's checks in the amount of $5,000 to BJH and $3,500 to [WU] did not include any amount for the attorneys' fees being sought by BJH and [WU] pursuant to Mo. Rev. Stat. § 537.525.2, and thus the checks do not constitute complete relief to BJH and [WU] on their counterclaims."  Doc. [337] at 1.[1]  They contend that "a judgment awarding the fees to BJH and [WU] as prevailing parties must be entered under the language of the MCTA."  *Id.* at 4.[2]  And they argue that Weisman "has admitted liability and—in effect—confessed judgment by paying the full amount of

---

[1] The parties do not dispute that BJH and WU pleaded and prayed for the recovery of attorneys' fees under the MCTA and have incurred fees in prosecuting the counterclaims.  Doc. [122] at 25; Doc. [123] at 25; *see* R.S.Mo. § 537.525.2.

[2] BJH and WU cite several out-of-circuit cases that hold that an offer of judgment under Federal Rule of Civil Procedure 68 does not moot the controversy between the parties.  *See McCauley v. Trans Union, L.L.C.,* 402 F.3d 340, 342 (2d Cir. 2005) (a "rejected settlement offer [under Rule 68], by itself, [cannot render] moot[ ] [a] case."); *see also Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 952 (9th Cir. 2013).  According to BJH and WU, the cited cases generally found that a "better resolution" would be the entry of a default judgment against the defendant.  *See McCauley,* 402 F.3d at 342 ("a default judgment would serve Trans Union's desire to end the case, would award McCauley his damages and, like the Rule 68 settlement offer, would have no preclusive effect in other litigation"); *see also Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 952 (9th Cir. 2013) (agreeing with the Second Circuit that the "better resolution" is to enter judgment against the defendant).  In response, Weisman contends the cases cited by BJH and WU are inapposite here.  "In all but one of the six (6) cases cited on those pages of the Memo in Opposition," Weisman notes, "the defendant proceeded under Rule 68 of the Federal Rules of Civil Procedure."  Doc. [340] at 3.  And, unlike this case, "in none of those cases did the defendant actually make any payment to the plaintiff."  *Id.*  While cognizant of the contentious dispute regarding the effect of an unaccepted offer of judgment under Rule 68, the Court agrees that the cited cases are not determinative of this action because Weisman has tendered payment and did not act pursuant to Rule 68.

compensatory damages sought in the counterclaims." Doc. [337] at 4. Nevertheless, they acknowledge that the letters included with Weisman's payment, "did not indicate that the checks were a settlement offer or an offer for judgment under Fed. R. Civ. P. 68." *Id.*

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013); *Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1172 (8th Cir. 1994) ("Federal courts are courts of limited jurisdiction and can only hear actual 'cases or controversies' as defined under Article III of the Constitution."); *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)) ("'Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies.'"). "[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC*, 568 U.S. at 90–91 (internal citations omitted). "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." *Ali*, 419 F.3d at 723 (quoting *Haden*, 212 F.3d at 469); *Neighborhood Transp. Network, Inc.,* 42 F.3d at 1172 ("When a case . . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it."). "If an issue is moot in the Article III sense, [the court] has no discretion and must dismiss the action for lack of jurisdiction." *Ali*, 419 F.3d at 723. Accordingly, "'if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [case] must be dismissed.'" *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (quoting *Cornucopia Inst. v. U.S. Dep't of Agric.,* 560 F.3d 673, 676 (7th Cir. 2009) (internal quotation marks and citations omitted)).

An interest in attorneys' fees is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *see also Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 n.5 (8th Cir. 2006) ("A potential right to attorney fees alone would be insufficient to keep this controversy alive."); *Hickman v. State of Mo.*, 144 F.3d 1141, 1144 n.6 (8th Cir. 1998) ("As a general rule, and in this case, a claim for attorneys' fees is not sufficient to save a case from being moot.") (internal quotation marks omitted).

4

Here, Weisman tendered "payment in full of all compensatory damages," stating BJH and WU "have obtained complete relief." Doc. [333] at 3, 5. BJH and WU implicitly confirm that claim, as Weisman repeatedly states that his $5,000 and $3,500 payments constituted full compensatory damages, Docs. [333] at 3, 5; [332-3]; [340] at 9, and BJH and WU never deny it; they merely assert that they have not "obtained complete relief" because they are also entitled to attorneys' fees. Doc. [337] at 4. They also argue that, instead of dismissing the counterclaims as moot, the Court should enter "judgment in the amount of $5,000 in BJH's favor and in the amount of $3,500 in the University's favor, plus an award of reasonable attorneys' fees and costs." *Id*. at 7. Given that BJH and WU have obtained full compensatory relief for their MCTA counterclaims, no case or controversy as to the merits remains. BJH and WU's counterclaims are therefore moot and must be dismissed for lack of subject matter jurisdiction. BJH and WU's disputed claim to attorneys' fees is unable to save the case from mootness. *See Greater St. Louis Constr. Laborers Welfare Fund v. X-L Contracting, Inc.*, 2016 WL 3432529, at *5 (E.D. Mo. June 22, 2016) ("In light of Plaintiffs' unequivocal acknowledgement that they have obtained all the relief they sought in their Complaint (other than attorney's fees), it is clear that there are no present, live controversies with regard to the merits of Plaintiffs' claims . . . [and] [t]herefore the Court finds that Plaintiffs' claims are moot and must be dismissed for lack of subject matter jurisdiction."). Although the issue of attorneys' fees and whether the Court may adjudicate such a claim absent entry of judgment on BJH and WU's MCTA claim remains in dispute, BJH and WU's possible right to attorneys' fees is "insufficient to keep this controversy alive." *Advantage Media, L.L.C.*, 456 F.3d at 803 n.5.

## II. <u>Motion to Reconsider the Denial of Plaintiff's Motion for Summary Judgment on the Barnes Jewish Hospital Counterclaim</u>

On August 24, 2023, Weisman filed his motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e) (motion to alter or amend the judgment) and/or Federal Rule of Civil Procedure 60(b) (relief from judgment for mistake or other reason).[3] Doc. [326]; *see also*

---

[3] "The Federal Rules of Civil Procedure do not provide for 'motions for reconsideration.'" *Perry v. City of St. Louis,* 2021 WL 5881763, at *1 (E.D. Mo. Dec. 13, 2021) (citing *Peterson v. The Travelers Indem. Co.,* 867 F.3d 992, 997 (8th Cir. 2017)); *Winfrey v. Ford Motor Co.,* 2020 WL 5541081, at *1 (W.D. Mo. Aug. 20, 2020). "Courts 'typically construe [a motion for reconsideration] as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment.'" *Id.* (citing *Ackerland v. United States*, 633 F.3d 698, 701 (8th Cir. 2011)).

*Sanders v. Clemco Indus.*, 862 F.2d 161, 164-65, 168–69 (8th Cir. 1988) (discussing differences in characterizing unlabeled motion for reconsideration as either under Rule 59(e) or Rule 60(b); *Williamson v. Stange*, 2022 WL 13818675, at \*2 (E.D. Mo. Oct. 24, 2022).

Under Rule 59(e), a court may alter or amend a judgment upon a motion filed no later than twenty-eight (28) days after entry of the judgment. *See* Fed. R. Civ. P. 59(e). Rule 59(e) gives the Court power to rectify its own mistakes in the period immediately following the entry of judgment. *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982); *see also Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 n.2 (8th Cir. 2021) (noting that a motion under Rule 59(e) "is reserved for final judgments"). Rule 59(e) motions are limited, however, to correcting "manifest errors of law or fact or to present newly discovered evidence." *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citations omitted). Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments that could have been presented prior to judgment. District courts have broad discretion in determining whether to grant a Rule 59(e) motion. *Id.*

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

"Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (quoted case omitted). It is not intended to be a vehicle for seeking reconsideration of merits arguments that were previously considered by the court. *Broadway v. Norris*, 193 F.3d 987, 989-90 (8th Cir. 1999) ("In their 'motion for reconsideration,' defendants

did nothing more than reargue, somewhat more fully, the merits of their claim[].  This is not the purpose of Rule 60(b) . . . This ground alone is sufficient to prevent a holding that the District Court abused its discretion in denying the motion.").  The Eighth Circuit Court of Appeals has explained that a motion to reconsider a non-final order is construed as "one under Rule 60(b)." *Kohlbeck*, 7 F.4th at 734 n.2 ("This court construes motions for reconsideration of non-final orders as motions under Rule 60(b) . . . ." (citing *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018))).

The Court denied Weisman summary judgment on BJH's counterclaim after finding that a genuine dispute of material fact existed regarding the damages incurred by BJH.  In his motion to reconsider, Weisman again argues that BJH has shown no compensatory damages.  Docs. [325], [326].

After reviewing Plaintiff's arguments in his motion for reconsideration, the Court finds that there are no grounds for granting relief under either Rule 59(e) or 60(b).  The Court again concludes that a genuine dispute of fact regarding BJH's damages precludes summary judgment. BJH provided evidence that BJC employees spent considerable time investigating the computer policies in place in 2017 and verifying that the computer terminal at issue was not altered or damaged by the access.  *See* Doc. [334] at 3.  Indeed, Weisman tacitly admits that an issue of fact exists as to damages because he provided "full payment of all compensatory damages to which [BJH] *could be* entitled on its counterclaim."  *See* Doc. [334-2] (emphasis added).  Thus, the Court finds no manifest error of fact, nor mistake, inadvertence, surprise, or excusable neglect, and denies Weisman's motion to reconsider.

### III.    Bill of Costs

Also before the Court are the motions for bills of costs filed by Defendants Benzinger, Cox, Evers, and WU, Doc. [329] and by Defendants BJH and BJC, Doc. [330], in which Defendants seek their costs as prevailing parties in this litigation.  The WU Defendants seek a total of $23,103.83 in costs, and the BJH Defendants seek a total of $27,065.50 in costs. Defendants seek to recover costs related to copying and depositions.  Plaintiffs filed an objection to both motions, as more fully discussed below.  *See* Docs. [335], [336].

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed

to the prevailing party." Fed. R. Civ. P. 54(d). Federal statute provides that the following six expenses are taxable as costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

28 U.S.C. §1920.

A district court has broad discretion over awarding costs to a prevailing party. *Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 930 (8th Cir. 2011) (citation omitted). But "[f]ederal courts are bound by the limitations set out in section 1920." *168th & Dodge, LP v. Rave Reviews Cinemas, L.L.C.*, 501 F.3d 945, 957 (8th Cir. 2007) (quoting *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002)). "A prevailing party is presumptively entitled to recover all of its [taxable] costs." *Id.* (quoting *In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005)). "Costs, unlike attorney's fees, are awarded to a prevailing party as a matter of course, unless the district court directs otherwise; unusual circumstances need not be present." *Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982) (citation omitted).

### A. WU Defendants' Motion for Bill of Costs

Plaintiffs object to the WU Defendants' requested $2,615.35 in costs related to videotaped depositions of Weisman, Evers, Benzinger, and Thompson, arguing that it was not necessary to have both video and transcriptions of the depositions, and therefore they are not both taxable. Contrary to Plaintiffs' assertion, courts frequently allow recovery of costs for both stenographic transcription and video recording of depositions "where the prevailing party offers a persuasive reason for obtaining the video deposition," such as the importance of a witness, to more effectively show a deponents' demeanor and nonverbal communication, where a witness may not be available for trial, or where the case was complex or fiercely litigated. *Major Brands, Inc. v. Mast-Jagermeister US, Inc.*, 2022 WL 4646061, at *2 (E.D. Mo. Sept. 30, 2022); *see also Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 2020 WL 853736, at *4 (E.D. Mo.

8

Feb. 20, 2020), aff'd 13 F.4th 659 (8th Cir. 2021) (overruling defendant's objection to costs for videotaped depositions and holding that "Courts in this district have allowed recovery of costs for both stenographic transcription and video recording of depositions where the prevailing party offers a persuasive reason for obtaining the video deposition, such as the importance of the witness and the likelihood that each witness would be unavailable for trial. . . . The Court finds that under the circumstances of this complex and fiercely litigated case, [plaintiff] has established that both printed and electronic transcripts of the same depositions were necessary for the reasons it asserts."); *Gerling v. Waite*, 2022 WL 558083, at *8 (E.D. Mo. Feb. 24, 2022) (finding plaintiff "has adequately demonstrated that both printed and electronic transcripts of the same depositions were necessary for the reasons he asserts"—"that his counsel finds witnesses tend to take a deposition more seriously if it is videotaped and that better testimony is typically elicited. . . . [and] it was reasonable to take a 'belt and suspenders' approach by having the video available if it became necessary based on the witnesses' live testimony at trial"); *Gustafson v. Bi-State Dev. Agency*, 2020 WL 6544236, at *2 (E.D. Mo. Nov. 6, 2020) (awarding costs of plaintiff's videotaped deposition where defendants "obtained the video transcript for purposes of impeachment, to show the jury Plaintiff's 'sarcasm and candor' that might not have been conveyed by the written transcript"; holding that videotaped deposition was necessary where plaintiff "was an important witness in this case" and "his credibility, and thus [his] demeanor, [was] of significant importance.") (alterations in original); *Hogan Logistics, Inc. v. Davis Transfer Co., Inc.*, 2018 WL 3483077, at *3 (E.D. Mo. July 19, 2018) (awarding costs for videotaped depositions and holding plaintiff "has established both printed and electronic transcripts of the same depositions were 'necessarily obtained for use in the case" where the video depositions were taken for use at trial in a large and complex case).

Here, WU Defendants argue that the videotaped deposition of Weisman was necessary for the case, as he is the key witness in the matter, and the video would have been used to impeach him at trial because the nonverbal cues in the video more effectively showed his "combative, sarcastic, dishonest, and unhinged demeanor," which "would not have come across from reading the written transcript."  Doc. [339] at 5-6.  With respect to the videotapes of Evers, Benzinger, and Thompson, Defendants note that it was Plaintiffs who requested and noticed the depositions as being transcribed both stenographically and by video means and assert that where the opposing party has ordered the video deposition, courts have found that the costs of obtaining

9

the video should be awarded to the prevailing party. *Id*. at 6 (citing multiple cases, including *Jackson v. Gen. Motors, LLC*, 2020 WL 4698501, at *3 (E.D. Mo. Aug. 13, 2020) (overruling objection to video deposition costs where plaintiff requested the video deposition)). Defendants also contend that Evers, Benzinger, and Thompson all held important positions while Weisman was a resident and would have been critical witnesses at trial, and their availability to testify at a trial was not assured. The Court is persuaded by Defendant's proffered justifications and will tax costs of the video recordings against Plaintiffs.

Plaintiffs also object to the $945 in costs incurred for synchronizing the text and video for the depositions. This Court has previously found that synchronization is done for the convenience of a party, and as such, costs for the service are not properly taxable under § 1920 as necessary for use in the case. *See Bohner v. Union P.R.R. Co.*, 2022 WL 970872, at *6 (E.D. Mo. Mar. 31, 2022). Defendants argue that is nonetheless within the Court's discretion to award such costs, but the Court declines the invitation to reverse course on the issue and will not tax the $945 incurred for synchronization.

Plaintiffs next object to $1,125 in costs incurred for videoconference and remote attendance fees related to the depositions of Kaye, Fleischmann, Sinow, Gilbert, and Wilson. Plaintiff claims that there are no cases in this jurisdiction addressing this issue, *see* Doc. [336] at 5, but this Court has previously held that "videoconference connection fees are 'costs associated with conducting video depositions' that this Court is authorized pursuant to §1920(2) to award" a prevailing party. *Bohner*, 2022 WL 970872, at *6. The Court will tax $1,125 for videoconference and remote attendance fees to Plaintiff.

Finally, Plaintiffs object to miscellaneous costs related to the depositions, including condensed transcripts, litigation bundle/package charges, processing, finance, and delivery fees charged by the court reporter, and scanned deposition exhibits. These are all costs that have been allowed in this district, and the Court will allow the costs here. *See Jacobson Warehouse*, 2020 WL 853736, at *4; *Major Brands*, 2022 WL 4646061, at *3. Therefore, the Court will tax costs against Plaintiff in this matter in the amount of $205 for condensed transcripts, $300 for e-transcripts, $332.45 for scanning exhibits, and $30 for shipping costs.

In sum, the Court will not allow the $945 for synchronization services but will award all other costs requested by the WU Defendants, for a total of $22,158.

**B. BJH Motion for Bill of Costs**

Plaintiffs first object to $11,706.50 in costs related to transcribing audio recordings of interactions between Weisman and other doctors that Weisman produced to BJC and BJH in discovery. Apparently, Weisman had a practice of secretly recording his conversations with doctors in his residency training program, and it is these recordings that are at issue. *See* Docs. [277] at 7-9; [338] at 2. Plaintiffs argue that transcriptions of the recordings are not necessary and therefore not properly taxable. Defendants argue that the transcripts were necessary for multiple reasons. First, they were important to their defense, as Weisman admitted that he made the recordings as part of his effort to build a legal claim against the program. Doc. [338] at 2. Several of the recordings were of doctors who were individually named as Defendants in this matter, and Defendants say that they reasonably anticipated the transcripts would need to be used for impeachment purposes at trial. *Id*. Defendants also claim the transcriptions were necessary because the recordings were of poor quality and difficult to hear and understand. *Id*. Finally, as Defendants note, only $5,853.25 in costs is attributable to the transcription of the recordings, not the $11,706.50 amount objected to by Plaintiffs. *Id*. at 3; *see also* Doc. [331-2] at 2.

Courts in this jurisdiction have allowed taxation of costs for transcription of recordings in circumstances similar to these. *See Jackson v. Gen. Motors, LLC*, 2020 WL 4698501, at *3 (E.D. Mo. Aug. 13, 2020) (The court allowed taxation of costs for transcription of recordings made by Plaintiff where the recordings were "hard to hear and understand because there is significant shuffling and crackling, possibly due to Plaintiff having the recording device in a concealing pocket or bag."). The Court is persuaded that transcription of the recordings here was necessary to Defendants' case and properly taxable. Plaintiffs' objection is overruled.

Plaintiffs next object to the BJH Defendants' requested costs related to videotaped depositions, arguing that both video and transcriptions of the depositions were not necessary, and therefore not taxable. Defendants' response to this objection is substantially similar to the arguments offered by the WU Defendants, and the Court is similarly persuaded that both stenographic and video-recorded deposition transcripts were necessary to the BJH Defendants' case and will overrule Plaintiffs' objection.

Plaintiffs next object to all costs incurred for videoconference and remote attendance fees related to the depositions of Kaye, Fleischmann, Sinow, Gilbert, and Wilson. As discussed above, this Court has previously held that "videoconference connection fees are 'costs associated

with conducting video depositions' that this Court is authorized pursuant to §1920(2) to award" a prevailing party. *Bohner*, 2022 WL 970872, at *6. The Court will tax the videoconference and remote attendance fees requested by BJC/BJH Defendants to Plaintiff.

Plaintiffs also object to the costs related to synchronization, and the Court will not allow the sync costs to be taxed for the same reasons stated above. Thus, the Court will not charge the $750 attributable to sync costs to Plaintiffs. Finally, Plaintiffs make objections similar to those made against the WU Defendants in connection with various miscellaneous costs, and the Court will overrule the objections for the reasons stated above.

In sum, the Court will not allow the $750 for synchronization services but will award all other costs requested by the BJH Defendants, for a total amount of $26,315.50.

Accordingly,

**IT IS HEREBY ORDERED** that Motion of Counterclaim Defendant, Jeffrey Weisman, to Dismiss Counterclaims for Lack of Subject-Matter Jurisdiction Due to Mootness, Doc. [332], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reconsider the Denial of Plaintiff's Motion for Summary Judgment on the Barnes Jewish Hospital Counterclaim, Doc. [325], is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Bill of Costs filed by Defendants Benzinger, Cox, Evers, and WU, Doc. [329], is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Motion for Bill of Costs filed by Defendants BJH and BJC, Doc. [330], is **GRANTED** in part and **DENIED** in part.

**IT IS FINALLY ORDERED** the Clerk of Court shall tax costs in the amount of $22,158 against Plaintiffs with respect to Doc. [329] and $26,315.50 against Plaintiffs with respect to Doc. [330].

A separate Judgment will accompany this Memorandum and Order.

Dated this 25th day of March, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE